2005-NMSC-001

106 P.3d 563

**STATE of New Mexico, Plaintiff–
Respondent,**

v.

**Rodrigo DOMINGUEZ, Defendant–
Petitioner.**

No. 28,119.

Supreme Court of New Mexico.

Jan. 27, 2005.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM for Petitioner.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM for Respondent.

**OPINION**

SERNA, Justice.

{1} Following a jury trial, Defendant Rodrigo Dominguez was convicted of voluntary manslaughter, contrary to NMSA 1978, § 30–2–3(A) (1994), aggravated battery, contrary to NMSA 1978, § 30–3–5 (1969), two counts of shooting at or from a motor vehicle, contrary to NMSA 1978, § 30–3–8(B) (1993), and conspiracy to commit tampering with evidence, contrary to NMSA 1978, §§ 30–22–5 (1963, prior to 2003 amendment), –28–2 (1979).[1]

{2} The Court of Appeals affirmed Defendant's convictions in a unanimous memorandum opinion. This Court granted Defendant's petition for writ of certiorari to the Court of Appeals on four issues: (1) whether his convictions of voluntary manslaughter and shooting at or from a motor vehicle violate double jeopardy; (2) whether his convictions of aggravated battery and shooting at or from a motor vehicle violate double jeopardy; (3) whether, in the alternative to the first two arguments, the two convictions of shooting at or from a motor vehicle violate double jeopardy; and (4) whether the Court of Appeals erred in refusing to consider Defendant's argument of an erroneous jury instruction. Defendant has waived the fourth issue raised in his petition. In his brief in chief, Defendant raises a new issue not presented in his petition to this Court or in his arguments to the Court of Appeals: whether giving jury instructions on two of the three theories of first degree murder contained in NMSA 1978, § 30–2–1(A) (1994), without phrasing them in the alternative, constitutes overcharging. *See State v. Reyes*, 2002–NMSC–024, ¶¶ 10–17, 132 N.M. 576, 52 P.3d 948 (rejecting a claim that "convictions under [two] theories of first degree murder resulted from ambiguous jury instructions because the jury was not told that it could not convict

---

1. We note that an apparent oversight is contained in the judgment listing one of Defendant's convictions as tampering with evidence rather than conspiracy to commit tampering with evidence. The signed verdict forms and direct polling of the jurors by the trial judge indicate that the jury found Defendant not guilty of tampering with evidence and guilty of conspiracy to commit tampering with evidence. The district court shall correct this error on remand. *See State v. Soliz*, 79 N.M. 263, 267, 442 P.2d 575, 579 (1968) ("The error in the judgment obviously is a result of inadvertence and is subject to amendment to conform with the verdict."); Rule 5–113(B) NMRA 2005 (discussing the correction of clerical errors and errors due to oversight or omission).

[the defendant] for both deliberate murder and felony murder"); *see also State v. Salazar*, 1997–NMSC–044, ¶¶ 41–42, 123 N.M. 778, 945 P.2d 996 (stating that first degree murder is a single crime, whether supported by a single theory or by multiple theories, and upholding a general verdict of first degree murder under two alternative theories on the basis that there is "no requirement that the jurors . . . unanimously agree on one of the alternative theories presented" and "[u]nanimity was only required with regard to the overall charge of first degree murder").

{3} We reject Defendant's first two arguments because, as this Court has squarely held, the Legislature intended to provide for multiple punishments for these crimes. We also reject Defendant's third point of error because the conduct supporting the two convictions of shooting at or from a vehicle is not unitary. We do not consider the issue raised for the first time in Defendant's brief in chief. *See* Rule 12–502(C)(2) NMRA 2005 ("[O]nly the questions set forth in the petition will be considered by the [Supreme] Court."). We affirm Defendant's convictions.

## I. Facts

{4} Defendant's convictions stemmed from an incident in which Defendant and several of his friends went to a convenience store late one night to fight another group of individuals. Each member of Defendant's group was armed with a gun that was supplied by Defendant, while none of the members of the other group had a gun. Both groups arrived in cars, and Defendant was the driver in his group's car. After one member of the other group exited their vehicle with a baseball bat, Defendant's group opened fire. Charles McClaugherty was in Defendant's group. *See generally State v. McClaugherty*, 2003–NMSC–006, 133 N.M. 459, 64 P.3d 486. There was evidence at Defendant's trial that McClaugherty exited the vehicle Defendant was driving, fired numerous times into the other car, and killed the driver, Ricky Solisz. Another shooter hit and wounded the man who exited the other group's car, Vince Martinez. Three witnesses, one from Solisz's group and two from Defendant's group who were in a different car than the one Defendant was driving, testified to seeing numerous flashes of gunfire from the driver's side of Defendant's car, which would have been where Defendant was sitting. Experts linked two separate Glock .40 handguns to the shootings, and the evidence was consistent with each victim being shot with a different Glock .40 handgun. A member of Defendant's group testified that when Defendant and McClaugherty returned to McClaugherty's apartment after the shooting each was carrying a handgun consistent with a Glock .40. This witness testified that Defendant and McClaugherty bragged about the shooting to their friends immediately after the incident.

## II. Voluntary Manslaughter and Shooting at or from a Motor Vehicle

{5} Defendant contends that his convictions of voluntary manslaughter and shooting at or from a motor vehicle in relation to the death of Solisz violates the protection against double jeopardy. The Double Jeopardy Clause in the United States Constitution, applicable in New Mexico through the Fourteenth Amendment, provides that a defendant shall not "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This provision protects against multiple prosecutions for the same offense and against multiple punishments for the same offense arising out of a single prosecution. However, for multiple punishments such as Defendant's convictions of voluntary manslaughter and shooting at a motor vehicle, the Double Jeopardy Clause only prevents a court from imposing greater punishment than the Legislature intended. *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). "[T]he sole limitation on multiple punishments is legislative intent." *Id.* at 13, 810 P.2d at 1233. We have adopted a two-part test for determining whether multiple punishments violate the constitutional protection against double jeopardy. *Id.* We ask, first, "whether the conduct underlying the offense is unitary" and, second, "whether the [L]egislature intended to create separately punishable offenses." *Id.*

{6} In this case, the parties do not dispute that the convictions of voluntary manslaughter and shooting at or from a motor vehicle are based on the unitary conduct of Defendant aiding and abetting McClaugherty's shooting of Solisz. Our analysis therefore focuses on legislative intent. "If the [L]egislature expressly provides for multiple punishments, the double jeopardy inquiry must cease. Absent a clear expression of legislative intent, a court first must apply the [test established in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)] to the elements of each statute." *Swafford,* 112 N.M. at 14, 810 P.2d at 1234 (citation omitted). This elements inquiry asks "whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180.

> The rationale underlying the *Blockburger* test is that if each statute requires an element of proof not required by the other, it may be inferred that the [L]egislature intended to authorize separate application of each statute. Conversely, if proving violation of one statute always proves a violation of another (one statute is a lesser included offense of another, *i.e.,* it shares all of its elements with another), then it would appear the [L]egislature was creating alternative bases for prosecution, but only a single offense.

*Swafford,* 112 N.M. at 9, 810 P.2d at 1229. Based on this rationale, "[i]f that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Id.* at 14, 810 P.2d at 1234. "Conversely, if the elements of the statutes are not subsumed one within the other, then the *Blockburger* test raises only a presumption that the statutes punish distinct offenses. That presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent." *Id.* These other indicia include "the social evils sought to be addressed by each offense" and "the language, structure, and legislative history" of the two provisions. *Id.* at 9, 810 P.2d at 1229.

{7} We have previously applied this double jeopardy analysis in a context closely resembling the present case. In *State v. Gonzales,* 113 N.M. 221, 223–25, 824 P.2d 1023, 1025–27 (1992), the defendant was convicted of first degree murder and shooting into an occupied vehicle based on the same conduct and argued that these convictions violated double jeopardy. We noted that "[t]he question of whether convictions under several statutes constitute the same offense for double jeopardy purposes is a matter of determining the legislative intent." *Id.* at 224, 824 P.2d at 1026. Applying *Blockburger,* we concluded that each crime contained an element that the other did not, thereby raising a presumption that the Legislature intended to create separately punishable offenses. *Id.* at 225, 824 P.2d at 1027.

> Clearly, each statute in question in this appeal requires proof of an element that the other statute does not require. The murder statute requires proof of the unlawful killing of a human being which need not be accomplished by shooting at an occupied motor vehicle. The shooting at an occupied motor vehicle statute requires proof of discharging a firearm at an occupied vehicle but does not require the killing of a human being. Thus, the greater offense—murder—does not subsume the lesser offense—shooting into an occupied vehicle—because each requires proof of an element absent in the other.

*Id.* at 224–25, 824 P.2d at 1026–27 (citations omitted). We further concluded that "the statutes protect different social interests," with the murder statute directed at preventing unlawful killings and the shooting at a vehicle statute directed at protecting the public from the reckless shooting into a vehicle and possible resulting property damage and bodily injury. *Id.* at 225, 824 P.2d at 1027. "In addition, while the statutes in question here may be violated together, they are not necessarily violated together." *Id.* "Therefore, we find that the [L]egislature intended for separate punishment for unitary conduct that violated both statutes," and thus, there was no double jeopardy violation. *Id.*

{8} *Gonzales* is controlling precedent and is directly on point. As in *Gonzales,* voluntary manslaughter does not require the element of discharging a firearm at or from a motor vehicle, but this is a required element for the crime of shooting at or from a motor vehicle. In addition, voluntary manslaughter contains the same element as the first degree murder conviction at issue in *Gonzales* that distinguishes these crimes from the crime of shooting at or from a vehicle: the element of "the unlawful killing of a human being." Section 30–2–3. Defendant argues that this element is not truly distinct for voluntary manslaughter because the element of great bodily harm for shooting at a motor vehicle may include death. *See State v. Varela,* 1999–NMSC–045, ¶¶ 10–14, 128 N.M. 454, 993 P.2d 1280 (concluding that the element of great bodily harm for the crime of shooting at a dwelling or occupied building under Section 30–3–8(A) may include death). We reject this argument for two reasons.

{9} First, our analysis in *Gonzales* implicitly holds that the element of great bodily harm for shooting at a motor vehicle is distinct from the element of an unlawful killing for first degree murder. In *Gonzales,* the defendant was convicted of both first degree murder and shooting at a motor vehicle in relation to the death of a single victim. 113 N.M. at 223, 824 P.2d at 1025. At that time, the shooting at a motor vehicle statute provided that the crime was a fourth degree felony if it did not result in great bodily harm and a third degree felony if it did result in great bodily harm. 1987 N.M. Laws, ch. 213, § 1. We take judicial notice of the record in *Gonzales* and note that the jury instruction for the crime of shooting at a motor vehicle in that case included the element of the victim suffering great bodily harm as a result of the shooting at a motor vehicle. *See Miller v. Smith,* 59 N.M. 235, 241, 282 P.2d 715, 719 (1955) ("This Court may take judicial notice under proper circumstances of other cases which are, or have been, on its docket. . . ."); *State v. Turner,* 81 N.M. 571, 576, 469 P.2d 720, 725 (Ct.App.1970) (similar). In addition, in *Varela,* our interpretation of Section 30–3–8 relied on NMSA 1978, § 30–1–12(A) (1963), which defines great bodily harm as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body." *Varela,* 1999–NMSC–045, ¶ 12, 128 N.M. 454, 993 P.2d 1280. This same statutory definition of great bodily harm was in existence at the time we decided *Gonzales.* Under these circumstances, we believe that our opinion in *Gonzales* implicitly assumes, as we later explicitly held in *Varela,* that evidence of death could support a jury finding on the element of great bodily harm. *See Gonzales,* 113 N.M. at 225, 824 P.2d at 1027 ("[D]eath may occur as a result of shooting into an occupied vehicle . . . ."); *see also Varela,* 1999–NMSC–045, ¶ 14, 128 N.M. 454, 993 P.2d 1280. We nevertheless held in *Gonzales* that the element of an unlawful killing for first degree murder was distinct from the elements of shooting at a motor vehicle, including the element of great bodily harm. Thus, contrary to Defendant's argument, *Varela* does not alter our holding in *Gonzales,* and there has been no change in the elements of the crime of shooting at a motor vehicle to distinguish our analysis in *Gonzales* from the *Blockburger* analysis in the present case.[2]

{10} Second, Defendant's argument that death and great bodily harm are identical elements for purposes of a *Blockburger* test ignores the plain language of the Legislature. The shooting at or from a motor vehicle statute does not require proof of a death or include death as an alternative to great bodily harm. Section 30–3–8(B). Had Solisz survived his wounds, Defendant would still

---

**2.** At oral argument, Defendant relied on two cases from the United States Supreme Court, *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington,* 542 U.S. 296, ——, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004), as establishing a change in the law since we decided *Gonzales* that would require the fact of great bodily harm to be submitted to the jury. However, even prior to these cases, as demonstrated by the jury instructions actually used in *Gonzales,* New Mexico courts treated great bodily harm as an element of shooting at a motor vehicle to be decided by the jury when this alternative of the crime is charged. These federal cases therefore do not modify our elements analysis in *Gonzales.*

have been liable for the same crime of shooting at a motor vehicle resulting in great bodily harm, Section 30–3–8(B), and would still have received the same elements instruction for this crime. *See* UJI 14–344 NMRA 2005. However, in the same factual scenario, Defendant could not have been convicted of voluntary manslaughter because the element of an unlawful killing would be absent. As a result, proving the violation of shooting at a motor vehicle resulting in great bodily harm does not always prove the violation of voluntary manslaughter such that one crime subsumes the other. *See Swafford*, 112 N.M. at 9, 810 P.2d at 1229 ("[I]f each statute requires an element of proof not required by the other, it may be inferred that the [L]egislature intended to authorize separate application of each statute."). These crimes have distinct elements under the *Blockburger* test.

{11} We recognize that we stated in *Varela* that "the Legislature *equated* 'causing death' and 'great bodily harm.' " 1999–NMSC–045, ¶ 14, 128 N.M. 454, 993 P.2d 1280 (emphasis added). It would perhaps have been clearer if we had stated that a rational jury could find the element of great bodily harm beyond a reasonable doubt based on evidence of death. "An injury that causes death, surely often, if not always, causes a high probability of death." *Id.* Factually, evidence that an injury has actually caused death may be used to demonstrate the element of great bodily harm because, consistent with Section 30–1–12(A), it establishes an injury that creates a high probability of death. *See Varela*, 1999–NMSC–045, ¶ 13, 128 N.M. 454, 993 P.2d 1280. However, this evidentiary use of the fact of death does not mean that death, as a statutory term, is interchangeable with great bodily harm for purposes of the Criminal Code.

{12} Comparing the voluntary manslaughter statute with the shooting at or from a motor vehicle statute and the statutory definition of great bodily harm in Section 30–1–12(A), it is clear that the Legislature does not "equate" death with great bodily harm. Otherwise, great bodily harm of any form as defined in Section 30–1–12(A) would be sufficient to prove an unlawful killing within the meaning of the voluntary man-

slaughter statute, which would be clearly contrary to the Legislature's intent and would be an absurd result. Voluntary manslaughter, like first and second degree murder, requires a death; the second degree felony of shooting at or from a motor vehicle resulting in great bodily harm does not. Thus, while death may be one evidentiary means of proving great bodily harm under Section 30–3–8(B), death is not a statutory element of the crime. For a *Blockburger* same elements test, this distinction is critical. "[T]he proper inquiry focuses upon the elements of the statutes in question—the evidence and proof offered at trial are immaterial." *Swafford*, 112 N.M. at 8, 810 P.2d at 1228; *accord Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) ("[T]he *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial."); *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) ("[A]pplication of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.").

{13} Because the statutory definition of shooting at or from a motor vehicle resulting in great bodily harm in Section 30–3–8(B) does not include death as an element of the crime, the fact that the State proved the element of great bodily harm with evidence of Solisz's death does not require us to construe Section 30–3–8(B) as a homicide statute. Consistent with the statutory elements, and similar to the jury instructions in *Gonzales*, the jury instructions in this case listed the killing of Solisz as an element of voluntary manslaughter but listed only great bodily harm to Solisz as an element of shooting at or from a motor vehicle. *Compare* UJI 14–220 NMRA 2005 (listing the element of killing the victim for voluntary manslaughter), *with* UJI 14–344 (listing the element of causing great bodily harm for shooting at or from a motor vehicle). The jury also received an instruction defining great bodily harm that mirrors the statutory definition of the term in Section 30–1–12(A). *See* UJI 14–131

NMRA 2005. Therefore, the element of an unlawful killing for voluntary manslaughter is distinct from the elements of the crime of shooting at or from a motor vehicle.

{14} Moreover, voluntary manslaughter has an additional element that differs from the elements of shooting at or from a motor vehicle. The mens rea required for voluntary manslaughter is the same as the mens rea required for second degree murder: objective knowledge that the defendant's acts create a strong probability of death or great bodily harm. NMSA 1978, § 30-2-1(B) (1994) (defining second degree murder); *State v. Brown,* 1996-NMSC-073, ¶¶ 16-17, 122 N.M. 724, 931 P.2d 69 (stating that objective knowledge, rather than subjective knowledge, is required for second degree murder); UJI 14-220 (listing the elements for voluntary manslaughter). By contrast, shooting at or from a motor vehicle requires a reckless disregard, Section 30-3-8(B), which is defined as knowledge that the defendant's "conduct created a substantial and foreseeable risk, that [the defendant] disregarded that risk and that [the defendant] was wholly indifferent to the consequences of [the] conduct and to the welfare and safety of others." UJI 14-1704 NMRA 2005, *incorporated by reference in* UJI 14-344 use note 3. The mens rea for shooting at or from a motor vehicle, although requiring knowledge of a substantial risk and indifference to the safety of others, does not require knowledge of a strong probability of death or great bodily harm. Thus, as the Court of Appeals recently held in affirming separate convictions for second degree murder and shooting at or from a motor vehicle, the mens rea element for voluntary manslaughter is distinct from the elements of shooting at or from a motor vehicle. *State v. Mireles,* 2004-NMCA-100, ¶ 29, 136 N.M. 337, 98 P.3d 727, *cert. denied,* 2004-NMCERT-008, 136 N.M. 491, 100 P.3d 197; *cf. Varela,* 1999-NMSC-045, ¶¶ 16-18, 128 N.M. 454, 993 P.2d 1280 (concluding, based on differing mens rea requirements, that the crime of shooting at a dwelling is not a lesser included offense of second degree murder for purposes of satisfying the strict elements test required for felonies to serve as a predicate for felony murder). Because voluntary manslaughter contains two elements that are not required for shooting at or from a motor vehicle and Section 30-3-8 requires the element of discharging a firearm at or from a motor vehicle, which is not required for voluntary manslaughter, we conclude that voluntary manslaughter and shooting at or from a motor vehicle resulting in great bodily harm have distinct elements under a *Blockburger* test, and there is a presumption that the Legislature intended to punish these crimes separately.

{15} As we concluded in *Gonzales,* other indicia of legislative intent support the presumption of permissible multiple punishments. Most notably, the voluntary manslaughter statute and the shooting at or from a motor vehicle statute serve different legislative purposes and protect against different social evils. *See Gonzales,* 113 N.M. at 225, 824 P.2d at 1027 (describing the different purposes served by the murder statute and the shooting at a motor vehicle statute). Also, "while the statutes in question here may be violated together, they are not necessarily violated together." *Id.; see State v. Sosa,* 1997-NMSC-032, ¶ 36, 123 N.M. 564, 943 P.2d 1017 ("The fact that each statute may be violated independent of the other will also lend support to the imposition of sentences for each offense.").

{16} Despite these persuasive indicia of legislative intent, Defendant contends that the presumption of multiple punishments is rebutted by our prior statement that "one death should result in only one homicide conviction." *State v. Santillanes,* 2001-NMSC-018, ¶ 5, 130 N.M. 464, 27 P.3d 456 (quotation marks and quoted authority omitted). We disagree. We applied this principle in *Santillanes* because, for the applicable alternatives of the statutes at issue, vehicular homicide and child abuse resulting in death, it was "the death of another that the Legislature intended to punish, not the manner in which it was accomplished." *Id.* (quotation marks and quoted authority omitted); *accord State v. House,* 2001-NMCA-011, ¶ 20, 130 N.M. 418, 25 P.3d 257 ("[T]he subject of punishment of vehicular homicide is the killing of another, not the unlawful operation of a motor vehicle."). This common legislative purpose between the two homicide statutes

rebutted the presumption in favor of multiple punishments that had been created by an application of the *Blockburger* test. *Santillanes*, 2001–NMSC–018, ¶ 23. Contrary to this analysis, however, the statutes at issue in the present case do not contain this identity of purpose. As we have just explained, the crime of shooting at or from a motor vehicle has a different purpose than punishing the death of another; it "is more narrowly designed to protect the public from reckless shooting into a vehicle and the possible property damage and bodily injury that may result." *Gonzales*, 113 N.M. at 225, 824 P.2d at 1027; *accord State v. Highfield*, 113 N.M. 606, 608, 830 P.2d 158, 160 (Ct.App.1992) (rejecting the argument that Section 30–3–8 is "addressed to bodily integrity" and stating that, "[i]n enacting Section 30–3–8, we believe the [L]egislature was concerned with conduct typically designed to terrorize or intimidate"). "While death may occur as a result of shooting into an occupied vehicle, we must strictly construe the social purpose protected by each statute." *Gonzales*, 113 N.M. at 225, 824 P.2d at 1027; *accord Swafford*, 112 N.M. at 14–15, 810 P.2d at 1234–35 ("[C]are must be taken in describing the evils sought to be prevented—social evils can be elusive and subject to diverse interpretation. Accordingly, the social evils proscribed by different statutes must be construed narrowly . . . .") (footnote omitted). As a result, the crime of shooting at or from a motor vehicle cannot be construed as a homicide crime within the meaning of *Santillanes*. Voluntary manslaughter is the only homicide conviction Defendant received for Solisz's death, and thus, the double jeopardy principle from *Santillanes* is inapposite. Applying the one death/one homicide conviction rule from *Santillanes* to the conviction of shooting at or from a motor vehicle would frustrate the Legislature's intent to address a different social evil than homicide. We thus apply our holding in *Gonzales* and conclude that the Legislature intended to create separately punishable offenses in enacting these two statutes.

### III. Aggravated Battery and Shooting at or from a Motor Vehicle

{17} As with the convictions related to the death of Solisz, Defendant argues that his convictions of both aggravated battery and shooting at or from a motor vehicle for the unitary conduct of shooting Martinez violates double jeopardy. For reasons similar to those expressed above, we reject this argument.

{18} Our analysis of this claim again focuses on legislative intent. Applying the *Blockburger* same elements test, we agree with Defendant's concession that each of these crimes contains an element that the other does not. Aggravated battery requires an intent to injure, which is not an element of shooting at or from a motor vehicle. The crime of shooting at or from a motor vehicle requires the discharge of a firearm at or from a motor vehicle, which is not an element of aggravated battery. Thus, there is a presumption that the Legislature intended to create separately punishable offenses.

{19} Other indicia of legislative intent support this presumption. These two statutes have different social aims. "The aggravated battery statute is directed at preserving the integrity of a person's body against serious injury." *State v. Vallejos*, 2000–NMCA–075, ¶ 18, 129 N.M. 424, 9 P.3d 668. As noted above, the purpose of the shooting at or from a motor vehicle statute is not principally to protect bodily integrity, *Highfield*, 113 N.M. at 608, 830 P.2d at 160; it has a narrower goal of protecting the public from reckless shooting at or from a vehicle. *Gonzales*, 113 N.M. at 225, 824 P.2d at 1027. This crime reflects the Legislature's judgment that traditional homicide and assault and battery crimes are inadequate to respond to the particular dangers involved with motor vehicle shootings. For shootings from a motor vehicle, including drive-by shootings, the Legislature was concerned with the heightened risk of harm to a larger number of people from firing out of a moving object and the ease of escape from use of a vehicle during the commission of the crime. For shooting at a vehicle, the Legislature directed its attention at the substantial dangers associated with firing on an enclosed space that is likely to be occupied by people. Addressing an analogous question, we concluded in *Sosa* that the crimes of aggravated

assault with a deadly weapon and shooting into a vehicle proscribe different social evils. 1997–NMSC–032, ¶ 38, 123 N.M. 564, 943 P.2d 1017; *accord People v. Rivera*, 216 Mich.App. 648, 550 N.W.2d 593, 595 (1996) (allowing convictions for the crimes of assault with intent to commit murder and discharge of a firearm from a vehicle in part because "[t]he social norms protected by the respective statutes differ markedly"). Similarly, in *Highfield*, the Court of Appeals, relying on *Gonzales*, determined that assault with intent to commit a violent felony and shooting at a dwelling protect different social norms and achieve separate legislative policies. 113 N.M. at 608–09, 830 P.2d at 160–61.

{20} As another indicator of legislative intent, it is possible to commit each of these crimes without committing the other. If an individual fires a gun out of a car with reckless disregard but without a specific intent to injure, such as by shooting randomly or in the air, and causes great bodily harm, the individual will have violated Section 30–3–8(B) but will not have committed aggravated battery. There are also, of course, a multitude of ways to commit aggravated battery without the involvement of a motor vehicle.

{21} We conclude that the Legislature intended to create separately punishable offenses by enacting the aggravated battery statute and the shooting at or from a motor vehicle statute. We therefore reject Defendant's claim that these two convictions violate double jeopardy.

## IV. Two Convictions for Shooting at or from a Motor Vehicle

{22} As an alternative to his first two double jeopardy arguments, Defendant contends that his two convictions of shooting at or from a motor vehicle violate the protection against double jeopardy. This argument relates to multiple convictions under a single statute, which has been described as a unit of prosecution claim and distinguished from the double description claims addressed above relating to multiple convictions under separate statutes. *See Swafford*, 112 N.M. at 8, 810 P.2d at 1228. For unit of prosecution cases, "[t]he relevant inquiry ... is whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Id.* In this context, there is "a presumption of lenity that, absent an express indication to the contrary, the [L]egislature did not intend to fragment a course of conduct into separate offenses." *Id.* Before addressing whether the Legislature intended to divide unitary conduct into multiple units of prosecution, however, we must first determine whether the conduct underlying the two convictions is unitary or discrete. "Clearly, if the defendant commits two discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense." *Id.* at 13, 810 P.2d at 1233.

{23} We believe that the facts in this case support a conclusion that Defendant's conduct with respect to each conviction under Section 30–3–8 was distinct rather than unitary. In assessing whether conduct is unitary or distinct in a unit of prosecution case, we look to a number of indicia of distinctness. It is firmly established in New Mexico law that the existence of multiple victims is an important factor both in assessing whether conduct is unitary and in determining, in accordance with legislative intent, the appropriate unit of prosecution for crimes of violence. *Herron v. State*, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991) (stating that "multiple victims will likely give rise to multiple offenses"); *State v. Roper*, 2001–NMCA–093, ¶¶ 10–13, 131 N.M. 189, 34 P.3d 133; *State v. Castaneda*, 2001–NMCA–052, ¶¶ 12–14, 130 N.M. 679, 30 P.3d 368; *House*, 2001–NMCA–011, ¶ 24, 130 N.M. 418, 25 P.3d 257; *State v. Morro*, 1999–NMCA–118, ¶ 19, 127 N.M. 763, 987 P.2d 420; *State v. Barr*, 1999–NMCA–081, ¶¶ 17–23, 127 N.M. 504, 984 P.2d 185; *State v. Johnson*, 103 N.M. 364, 374, 707 P.2d 1174, 1184 (Ct.App.1985). In addition to this factor, other indicia of distinctness include the temporal proximity of the acts, the spatial proximity of the acts, the similarity of the acts, the location of the victim at the time of the acts, the identity and number of victims for each act, the identity and number of perpetrators for each act, the existence of any intervening events, the sequence of the acts, and the defendant's

mental state or objective during each act. *See Swafford,* 112 N.M. at 13–14, 810 P.2d at 1233–34; *Herron,* 111 N.M. at 361, 805 P.2d at 628; *Barr,* 1999–NMCA–081, ¶ 16, 127 N.M. 504, 984 P.2d 185.

{24} In *Gonzales* and *Varela,* we determined that the firing of multiple bullets from a single gun without any separation of time and space was a unitary act. *Varela,* 1999–NMSC–045, ¶ 39, 128 N.M. 454, 993 P.2d 1280; *Gonzales,* 113 N.M. at 224, 824 P.2d at 1026. However, in the present case, the evidence of distinctness extends far beyond the firing of multiple bullets. In addition to this fact, this case involves the important factor of multiple victims. The evidence further supported a finding that each victim was shot with a different gun. There were also multiple perpetrators, with a reasonable inference that different principals shot different victims. *Cf. State v. Perez,* 2002–NMCA–040, ¶¶ 31–32, 132 N.M. 84, 44 P.3d 530 (concluding that the defendant's conduct was not unitary because "there were two victims and four perpetrators"). The two victims, as well as the two shooters, were separated by space. *Cf. Mireles,* 2004–NMCA–100, ¶¶ 27–28, 136 N.M. 337, 98 P.3d 727 (concluding that conduct supporting convictions for second degree murder and shooting at or from a motor vehicle was separated by time and space, and thus not unitary, because the defendant initially shot the victim from inside a car and then pursued the victim in order to shoot him again); *Barr,* 1999–NMCA–081, ¶ 20, 127 N.M. 504, 984 P.2d 185 ("[C]ertain of the criminal acts were separated in time and space from each other, they involved separate objectives and effects, and they involved different combinations of the seven juveniles."). Martinez was shot outside of his group's vehicle. As a result, the jury had to find that the shooter was inside a vehicle in order to be a violation of Section 30–3–8. There was eyewitness testimony that flashes of gunfire came from the driver's side of Defendant's vehicle, and Defendant had a Glock .40, which matched the caliber of shell casings at the scene. Thus, the jury could have found that Defendant acted as a principal and shot Martinez. In doing so, Defendant was found guilty of shooting from a motor vehicle. By contrast, Solisz was shot inside his vehicle by the second shooter, who was outside of Defendant's vehicle at the time he fired his weapon. Thus, the evidence supported a jury finding that Defendant was an accessory to shooting at a motor vehicle for Solisz's death. The jury determined that Defendant and his accessory each violated the statute. Defendant may be prosecuted for his own conduct and for the conduct of his accessory. The existence of two victims and the separation in space further supports this conclusion. The jury's conclusion did not violate double jeopardy.

{25} The facts in this case support non-unitary conduct for the two violations of Section 30–3–8. For this reason, we reject Defendant's double jeopardy claim. Because this case involves non-unitary conduct, it is unnecessary for us to determine the appropriate unit of prosecution in Section 30–3–8(B).

## V. Conclusion

{26} Based on different statutory elements and purposes, we conclude that the Legislature intended to provide for multiple punishments for the crimes of voluntary manslaughter and shooting at or from a motor vehicle and for the crimes of aggravated battery and shooting at or from a motor vehicle. We also conclude that Defendant's conduct supporting his two convictions for the crime of shooting at or from a motor vehicle was non-unitary. For these reasons, we reject Defendant's double jeopardy claims and affirm the Court of Appeals. We remand to the district court for correction of the judgment in conformity with the verdict.

{27} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, Justice, PETRA JIMENEZ MAES, Justice.

RICHARD C. BOSSON, Chief Justice (concurring in part and dissenting in part).

EDWARD L. CHÁVEZ, Justice (dissenting).

BOSSON, Justice (concurring in part and dissenting in part).

{28} The principle enunciated in *State v. Santillanes*, 2001–NMSC–018, 130 N.M. 464, 27 P.3d 456 expresses a long-standing tenet of our criminal jurisprudence that, for a single death, there can be only one conviction. In my view, the majority opinion seriously erodes this vital principle. It reaffirms *State v. Gonzales*, 113 N.M. 221, 824 P.2d 1023 (1992), while professing continuing loyalty to *Santillanes*. The majority tries to have it both ways. For a single death, Defendant was convicted of both voluntary manslaughter and shooting from a motor vehicle causing that same death. By concluding that Defendant's double jeopardy rights were not violated, the majority walks an invisible line. Respectfully, I am compelled to dissent. I concur with the majority on all remaining issues.

{29} The majority stresses that under the *Swafford/Blockburger* analysis, these two criminal statutes (manslaughter and shooting from a vehicle) do not violate double jeopardy. Using that test, I agree, and easily so. Under *Blockburger*, when comparing the elements of these two criminal statutes, one statute is not subsumed by the other; the elements of each are different. That point, however, proves little. The *Blockburger* analysis only creates a presumption in favor of multiple punishment. The presumption is not conclusive and can be overcome by other indicia of legislative intent. *See State v. Santillanes*, 2000–NMCA–017, ¶ 7, 128 N.M. 752, 998 P.2d 1203 [hereafter *Santillanes I* ].

{30} In both the Court of Appeals opinion in *Santillanes* and the opinion of this Court, we acknowledged that the two statutes involved in that particular case, vehicular manslaughter and child abuse resulting in death, punished "distinct offenses." 2001–NMSC–018, ¶ 5, 130 N.M. 464, 27 P.3d 456. As with the present situation, the two criminal statutes created offenses with different elements under the *Blockburger* analysis. Applying only *Blockburger*, double jeopardy did not bar multiple convictions. But that was not the end of the matter. Judge Apodaca, writing for the Court of Appeals in *Santillanes*, concluded that the *Blockburger* presumption

"is rebutted by the generally accepted notion that one death should result in only one homicide conviction." *Santillanes I*, 2000–NMCA–017, ¶ 8, 128 N.M. 752, 998 P.2d 1203, *adopted by Santillanes*, 2001 NMSC–018, ¶ 5, 130 N.M. 464, 27 P.3d 456. In other words, it does not matter that the two criminal statutes possess distinctive elements under *Blockburger*. Death is different, we said. For one death, there can only be one death conviction, we said. This is settled law.

{31} Importantly, that "generally accepted notion" is not confined to *Santillanes*; it has been affirmed in several opinions both before and after *Santillanes* was decided. *See State v. Reyes*, 2002–NMSC–024, ¶ 18, 132 N.M. 576, 52 P.3d 948; *State v. Mora*, 1997–NMSC–060, ¶ 64, 124 N.M. 346, 950 P.2d 789; *State v. Cooper*, 1997–NMSC–058, 124 N.M. 277, 949 P.2d 660; *State v. Pierce*, 110 N.M. 76, 85, 792 P.2d 408, 417 (1990); *State v. Crain*, 1997–NMCA–101, ¶ 15, 124 N.M. 84, 946 P.2d 1095; *State v. Landgraf*, 1996–NMCA–024, ¶ 31, 121 N.M. 445, 913 P.2d 252. Several times in the past we have stated that it is "the death of another the legislature intended to punish, not the manner in which it was accomplished." *Santillanes*, 2001–NMSC–018, ¶ 5, 130 N.M. 464, 27 P.3d 456; *see State v. Landgraf*, 1996–NMCA–024, ¶ 31, 121 N.M. 445, 913 P.2d 252. That "notion" is now a mainstay of New Mexico law and merits our respect.

{32} The majority opinion seeks to rationalize its betrayal of *Santillanes* by stating that the shooting from a vehicle statute, Section 30–3–8, is intended only to punish the act of shooting from a motor vehicle, rather than the resulting injury, and therefore there is no double conviction or punishment for the same death. This argument is belied by the very language of the statute. Other than the basic, lesser offense of shooting from a vehicle regardless of consequence (a fourth degree felony), punishment in Defendant's instance is grounded on the harm actually inflicted. Defendant received an enhanced sentence for this harm. Therefore, the statute evinces a specific legislative intent to punish not just the act of shooting from a car, but also the degree of personal injury imposed, in this case death. Clearly,

for the drive-by shooter, the greater the harm inflicted, the greater the punishment. Defendant is living proof of that fact.

{33} Defendant's situation is far from unique; today's opinion has far-reaching implications. There are other, similarly phrased criminal statutes. If shooting from a vehicle causing great bodily harm can be charged simultaneously with homicide for the same resulting death, then this changes the paradigm for other criminal statutes that have a "great bodily injury" or "death" enhancement. Unless we limit the present case to the present statute, these other statutes become fair game for overcharging based on multiple offenses for a single death. *See* NMSA 1978, § 30–3–9 (1989) (battery of school personnel, "great bodily harm or death"); NMSA 1978, § 30–3–9.1 (2001) (battery of sports officials, "death or great bodily harm"); NMSA 1978, § 30–3–16 (1995) (aggravated battery against a household member, "great bodily harm or death"); NMSA 1978, § 30–17–6 (1963) (aggravated arson, "causing a person great bodily harm"); NMSA 1978, § 30–22–17 (1963) (assault by prisoner, "causing or attempting to cause great bodily harm"). Future defendants could be charged under boutique criminal statutes describing the manner in which the person was killed, in addition to the traditional degrees of homicide. As a matter of sound judicial policy, we should avoid any shift in that direction.

{34} The majority opinion attempts to differentiate *Santillanes* from *Gonzales* on the ground that the specific statute, shooting from a vehicle, does not use the word "death" in its enhancement, but only "great bodily harm," unlike *Santillanes*. The majority seeks to draw a strict line of demarcation between "death" and "great bodily harm." In the majority's view, this is not a death statute, and accordingly, there is no conflict with the homicide statutes. But, of course, this Court has previously equated proof of death with proof of great bodily harm. *See State v. Varela*, 1999–NMSC–045, ¶ 14, 128 N.M. 454, 993 P.2d 1280. In this case, Defendant was found guilty of inflicting great bodily harm precisely because he aided in the shooting and killing of the victim. No matter the rationalization, Defendant is being punished twice for the same, single death.

{35} Because of this professed line of demarcation in the majority opinion, it appears that we agree on one point. If the language of this statute had actually contained the word "death," then based on the majority's view, *Santillanes* would preclude prosecution under both the drive-by shooting statute and general homicide. This is an important point because, according to the majority, it means that criminal statutes that enhance for "death" still fall within the "generally accepted notion" of *Santillanes*. Therefore, at least some of the statutes previously mentioned could not be charged in conjunction with a homicide prosecution, such as, Section 30–3–9 (battery of school personnel, "great bodily harm or death"), Section 30–3–9.1 (battery of sports officials, "death or great bodily harm"), and Section 30–3–16 (aggravated battery against a household member, "great bodily harm or death").

{36} The real reason for conflict here is that this Court decided *Gonzales* well before *Santillanes*. When *Santillanes* came down, it sharpened the focus of our double jeopardy analysis. It is clear that *Gonzales* could not have anticipated *Santillanes*, and that *Santillanes* did not discuss *Gonzales*. The circumstances in which the two opinions were decided did not directly address the conflict we now face. Given this conflict, both decisions cannot stand; one must yield to the other. *Gonzales* saw no double jeopardy problem in convicting for both the murder and the drive-by shooting responsible for that murder. *Santillanes* held the opposite. Possibly, *Gonzales* could be limited to the language of the statute as it was then written, which has since been amended. However, I favor reversing outright the portion of *Gonzales* now in conflict, because the principles promulgated in *Santillanes* are so heavily entrenched in our case law. In my view, we have to choose, and for me, the choice is clear.

CHÁVEZ, Justice (dissenting).

{37} Because I do not believe the Legislature intended multiple punishments for the unitary conduct at issue in this case, I dis-

sent. A defendant who kills the victim in a single homicidal act should only be prosecuted under the homicide statutes. I also believe the Legislature intended to punish shooting from or at a vehicle as an elevated form of aggravated battery precluding multiple punishments.

*Voluntary Manslaughter and Shooting from or at a Motor Vehicle*

{38} After finding that Defendant's accomplice shot and killed Solisz in a single homicidal act, the majority concludes that this unitary conduct could violate both a homicide statute, NMSA 1978, § 30-2-3(A) (1994) (voluntary manslaughter), and a statute that does not have as an element, the death of a victim, NMSA 1978, § 30-3-8(B) (1993) (shooting from or at a motor vehicle). When a defendant's conduct is not unitary, he may be convicted of both murder and shooting from or at a vehicle without violating the double jeopardy clause. *See State v. Mireles*, 2004-NMCA-100, ¶¶ 25-28, 136 N.M. 337, 98 P.3d 727 (finding no double jeopardy violation where defendant shot a victim from inside a car, seriously wounding the victim, then chased after the victim and shot the victim until he died). However, unless there are distinct acts, one resulting in great bodily harm and the other in death, a defendant cannot be punished for great bodily harm when his single homicidal act results in the death of the victim. *See, e.g., State v. Reyes*, 2002-NMSC-024, ¶ 19, 132 N.M. 576, 52 P.3d 948 (upholding, *inter alia*, Defendant's convictions for armed robbery and felony murder after finding substantial evidence that distinct instances of force resulted in the armed robbery and killing). It is also appropriate to use Section 30-3-8(B) as the predicate felony for a felony murder count when a defendant allegedly shoots from or at a vehicle with the requisite mens rea, causing death. *See State v. Varela*, 1999-NMSC-045, ¶¶ 18-21, 128 N.M. 454, 993 P.2d 1280. Where a defendant's conduct is unitary, a defendant's conviction for both felony murder and shooting from or at a vehicle would result in double jeopardy. *See id.* at ¶ 38. Here the jury rejected felony murder with shooting from or at a vehicle as the predicate felony. Instead, the jury found sufficient

provocation and found Defendant guilty of voluntary manslaughter.

{39} The majority's reasoning that death may prove great bodily harm leads to punishment that is greater than what I believe the Legislature intended. Under the majority's approach, a defendant who kills a victim in one act of violence could be convicted of murder, aggravated battery, simple battery and assault. After all, if death proves great bodily harm, great bodily harm proves injury, injury proves assault—all technically different harms. Because the Legislature did not include death as an element in Section 30-3-8(B) while enumerating different levels of harm with correspondingly increased levels of punishment, in my opinion the Legislature did not intend Section 30-3-8(B) to apply to unitary conduct resulting in death other than under the felony murder doctrine. *See Swafford v. State*, 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991) (instructing courts to look to statutory language, history, subject matter and relative punishment as "several guiding, but by no means exclusive, principles for divining legislative intent" to rebut the *Blockburger* presumption). At the very least, given the Legislature's lack of express language to allow both convictions, I believe the rule of lenity applies and the correct presumption is that the Legislature did not intend to pyramid punishments for the unitary conduct at issue in this case. *See id.* at 15, 810 P.2d at 1235; *State v. Landgraf*, 121 N.M. 445, 454-55, 913 P.2d 252, 261-62 (Ct. App.1996) (emphasizing that absent clear legislative intent, doubt should be resolved against turning a single act into multiple offenses). As such, I would vacate the shooting from or at a motor vehicle conviction as it relates to victim Solisz.

*Aggravated Battery and Shooting from or at a Motor Vehicle*

{40} I would also find double jeopardy with respect to Defendant's convictions of aggravated battery and shooting from or at a motor vehicle. The shooting from or at a motor vehicle statute contains many of the same elements as the base statute of aggravated battery but increases the punishment from a third degree felony to a second de-

gree felony because the same conduct involves shooting from or at a vehicle.[1] § 30–3–8(B); NMSA 1978, § 30–3–5(C) (1969). Under *Swafford* I believe this sentencing structure evinces a legislative intent to punish shooting from or at a vehicle as an elevated form of aggravated battery. *See Swafford*, 112 N.M. at 15, 810 P.2d at 1235 (holding that even if an initial presumption is created that the Legislature intended multiple punishments for the same conduct under *Blockburger*, it may be inferred that the Legislature did not intend punishment under both statutes if "one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute").

{41} Moreover, having concluded it would violate double jeopardy to convict Defendant of both a homicide crime and a non-homicide crime raises a substantial doubt whether the Legislature intended to punish Defendant's unitary act resulting in injury to Martinez as both aggravated battery and shooting from or at a motor vehicle. Otherwise, Defendant would be punished more severely for the injury of one victim than for the death of another victim. I do not believe the Legislature intended such a result. As such, I would vacate the aggravated battery conviction.

{42} For these reasons, I dissent from Parts II and III and need not reach the issue discussed in Part IV.

---

1. Here we confront differing canons of statutory construction for divining legislative intent: the *Blockburger* analysis on one hand, and the quanta of punishment and rule of lenity on the other. *See Swafford*, 112 N.M. at 15, 810 P.2d at 1235. I recognize that aggravated battery requires an intent to injure the victim, while shooting from or at a vehicle only requires reckless disregard for another. Nevertheless, the similarities between the two statutes, with the elevated punishment for shooting from or at a vehicle, suggest to me that the Legislature intended to punish a single act, if done with at least reckless disregard for another, under only one of the two statutes. *See id.*