This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                        **NO. 28,262**
                                                                          **Consolidated with: 28,252**

**JOE CHAVEZ,**

    Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert S. "Pat" Murdoch, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

A jury convicted Defendant of kidnapping, criminal sexual penetration (CSP), aggravated battery, and battery. Defendant appeals each of these convictions on various grounds. We affirm.

**I.     BACKGROUND**

At about five o'clock in the morning on Thanksgiving Day, 2005, officers responded to a 911 call regarding a possible domestic violence incident. Hearing a woman's cries for help coming from one of the apartments, Officer St. Onge knocked on the door and identified himself as the police. Nobody came to the door and the officer heard a struggle. After several minutes, the Defendant, who was naked, opened the inner door, saw Officer St. Onge, giggled, and closed the door. Shortly thereafter, Victim opened the inner door and unlocked the outer door. Before she could open the outer door, Defendant grabbed her and pulled her back. Defendant tried to shut the door, but the officer was able to open it and secure Defendant. Defendant appeared highly intoxicated and his feet were covered with blood and excrement.

The apartment showed signs of a struggle. The bedroom door had been kicked in. Inside the bedroom, the screen to the bedroom window had been pulled out and

3

bent. There were several holes in the wall, one of which had blood and a hair in it. There were feces on the floor and bed and blood on the walls. A door leading from the bedroom to the bathroom also had a kick hole in it, and there was quite a bit of blood on the tile floor next to the bathroom. Feces were strewn about the entire apartment.

The police found Victim crying hysterically with her eyes swollen shut. She was covered in blood, her face was swollen and her eyes were swollen shut, she had scratches and bruises on her arms, and she had fresh feces on her bare feet. The officers asked her if Defendant had done this to her and she nodded that he had. Victim was transported to the hospital without being interviewed.

At trial, Victim explained what had happened the previous night. After Defendant and Victim returned home, Defendant went to the store to purchase rum. The two of them started drinking sometime between 6:00 and 8:00 p.m. They were both drinking rum and coke. As the evening progressed, Defendant became obnoxious. There is no indication of how many drinks Defendant consumed.

At around 9:00 p.m., Victim decided to try to escape through the bedroom window. Defendant broke down the bedroom door and pulled her away from the window. Defendant then slammed Victim's head into the floor, rendering her unconscious. Victim remembers nothing after that point until the police arrived.

## II. DISCUSSION

On appeal, Defendant raises four issues: (1) that the district court erred by denying an instruction regarding voluntary intoxication as a defense to kidnapping, (2) that his convictions for aggravated and simple battery violated his protections against double jeopardy, (3) that there was insufficient evidence as to each conviction, and (4) that the district court abused its discretion in permitting an officer to testify that the domestic violence was one of the worst he had seen in his ten-year career. We address each of these issues in turn.

### A. Voluntary Intoxication

Defendant argues that the district court erred by denying an instruction on voluntary intoxication as a defense to the specific intent element of the kidnapping charge. This Court reviews whether there was evidence to support an instruction on intoxication as a defense de novo, viewing the evidence in the light most favorable to giving the instruction. *See State v. Romero*, 1998-NMCA-057, ¶ 22, 125 N.M. 161, 958 P.2d 119.

Kidnapping is a specific intent crime. *See State v. Clark*, 80 N.M. 340, 343, 455 P.2d 844, 847 (1969). To convict for kidnapping, the State had to prove that Defendant intended to hold Victim against her will to inflict physical injury on her.

However, a showing of intoxication could be used to negate this element of specific intent. *See Romero*, 1998-NMCA-057, ¶ 22.

Our cases have distinguished consumption of alcohol from intoxication. "[M]ere evidence that the defendant consumed an intoxicant is not enough." *Id.* ¶ 26. In *State v. Williams*, our Supreme Court held that the defendant was not entitled to a jury instruction on intoxication when he had shown only that he had consumed a double scotch an hour before he shot his former friend. 76 N.M. 578, 585-86, 417 P.2d 62, 67 (1966). Instead, *Williams* held that the defendant was required to produce evidence of his condition. *See id.* More recently, this Court upheld a decision to deny an instruction on intoxication despite evidence that a bank robber had consumed beer prior to the robbery. *State v. Hernandez*, 2003-NMCA-131, ¶¶ 21-22, 134 N.M. 510, 79 P.3d 1118. There, we observed that "[the d]efendant presented no evidence . . . that he was intoxicated to any degree, let alone to the point that it affected his ability to form the necessary mental state for a specific-intent crime." *Id.* ¶ 21.

To receive an instruction on intoxication, "evidence as to intoxication must be substantial and must relate to defendant's condition as of the time of the commission of the [crime]." *Romero*, 1998-NMCA-057, ¶ 23 (alteration in original) (internal quotation marks and citation omitted). Here, the kidnapping was complete when Defendant forcibly kept the Victim from leaving the apartment with the intent to

6

inflict physical injury on her. *See State v. McGuire*, 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990) (noting that the kidnapping is complete once the defendant restrains the victim with the requisite intent); *State v. Dombos*, 2008-NMCA-035, ¶ 11, 143 N.M. 668, 180 P.3d 675 ("A kidnapping begins with the initial restraint and continues until the victim has been released from confinement." (internal quotation marks and citation omitted)). The jury could reasonably have inferred that this took place when Defendant pulled the Victim away from the window and knocked her unconscious. Thus, the instruction was required if the record contains substantial evidence that Defendant was intoxicated at that time.

We agree with the district court that there was not substantial evidence that Defendant was intoxicated at the time the kidnapping occurred. Unlike *Romero,* 1998-NMCA-057, ¶ 27, where evidence that the defendant had difficulty walking just fifteen minutes prior to the assault was sufficient to require an instruction, there is no evidence that Defendant was impaired. Instead, the facts are similar to *Hernandez*, where there was no evidence of how much the defendant had consumed or how it affected him. *See* 2003-NMCA-131, ¶ 21. Victim's testimony suggests that, similar to *Williams*, Defendant consumed only one drink prior to the critical time. And while there is substantial evidence that Defendant was mean or obnoxious, this does not support an inference that his behavior was due to intoxication. *Cf. Hernandez*, 2003-

NMCA-131, ¶ 22 (finding that impulsive or irrational behavior is not evidence of intoxication). Similarly, the testimony from one of the 911 callers that both parties had been "drinking heavily," by itself, is not probative of intoxication. Even viewing this evidence in the light most favorable to giving the instruction, the evidence shows only consumption, not intoxication.

Furthermore, although it seems clear that Defendant was drunk at five in the morning, no evidence was presented to relate this back to the kidnapping the night before. "[A]s the passage of time lengthens between intoxication and the commission of the crime, the greater the likelihood that additional evidence will be required to assist the jury and avoid rank speculation." *Romero*, 1998-NMCA-057, ¶ 26; *see also State v. Lovato*, 110 N.M. 146, 147-48, 793 P.2d 276, 277-78 (Ct. App. 1990) (holding that evidence of intoxication four hours before the crime was insufficient despite the fact that one witness claimed that the defendant had continued to drink during those four hours). Here, at least eight hours passed between the time of the kidnapping and the time at which Defendant was observed to be intoxicated. Because there was insufficient evidence to demonstrate that Defendant's intoxication related back to the time of the actual kidnapping, an instruction on intoxication was not required. We therefore affirm the district court's denial of the instruction on intoxication.

8

## B.    Double Jeopardy

Defendant's next argument is that his conviction for battery is a double jeopardy violation because it is "clearly subsumed within" his conviction for aggravated battery.  We review the constitutional question of whether there has been a double jeopardy violation de novo.  *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77.

"The Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving 'multiple punishments for the same offense.'"  *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (quoting *N.C. v. Pearce*, 395 U.S. 711, 717 (1969)).  *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991), sets forth three separate protections afforded by the double jeopardy prohibition:  (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense.  For the double jeopardy protection against multiple punishments, there are two types of cases:  (1) when a defendant is charged with multiple violations of the same statute based on a single course of conduct, referred to as "unit of prosecution" cases; and (2) when a defendant is charged with violations of multiple statutes for the same conduct, referred to as "double-description" cases.

9

*See DeGraff*, 2006-NMSC-011, ¶ 25 (internal quotation marks and citation omitted). "In double-description cases, we consider first whether the conduct underlying the offenses is unitary and then consider whether the Legislature intended multiple punishments for this conduct." *Id.* ¶ 26. If the conduct is not unitary, the inquiry is over and multiple punishments are allowed. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

Whether a course of conduct is unitary is determined by examining whether "indicia of distinctness" separate the defendant's acts. *See id.* at 13, 810 P.2d at 1233. Indicia of distinctness include the proximity of the events in time or space, the existence of intervening events, and the defendant's objective during each act. *See State v. Dominguez*, 2005-NMSC-001, ¶ 23, 137 N.M. 1, 106 P.3d 563. Here, the conviction for aggravated battery was predicated on Defendant knocking Victim unconscious in the bedroom at 9:00 p.m. on Thanksgiving Eve. The simple battery conviction rested on Defendant pulling Victim away from the door when she let the police in at five in the morning on Thanksgiving Day. Because Defendant's acts were separated in time by eight hours and occurred in different rooms, the conduct was not unitary. *See State v. Franco*, 2005-NMSC-013, ¶ 10, 137 N.M. 447, 112 P.3d 1104 (finding conduct not to be unitary when a woman's possession of crack was separated by thirty to forty-five minutes and occurred in different locations within a small

efficiency apartment); *see also Swafford*, 112 N.M. at 15, 810 P.2d as 1235 (holding conduct not to be unitary when the defendant bound the victim, threatened her verbally for a period of time, and then sexually assaulted her). The intervening CSP provides an additional indication of distinctness. *See DeGraff*, 2006-NMSC-011, ¶ 27 ("In our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed.").

Because the conduct underlying the convictions for aggravated battery and battery was not unitary, we need not consider "whether the [L]egislature intended to create separately punishable offenses." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. We therefore affirm Defendant's convictions for aggravated battery and for battery.

**C.     Sufficiency of the Evidence**

Defendant contends that there is insufficient evidence to support each of his convictions. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect

11

to every element essential for conviction." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86. "To determine whether substantial evidence exists, we measure the evidence against the instructions submitted to the jury." *State v. Caldwell*, 2008-NMCA-049, ¶ 29, 143 N.M. 792, 182 P.3d 775.

**Criminal Sexual Penetration**

Defendant argues that his conviction for CSP is not supported by sufficient evidence because Victim, who was unconscious at the time, "could not say with requisite certainty *who* had sex with her—or whether such penetration even took place." Accordingly, we limit our analysis to those issues. *See* Rule 12-213(A)(4) NMRA.

The following evidence supporting penetration was introduced. Victim testified that her clothes were removed while she was unconscious and that she found condoms in the apartment when she was cleaning it after she returned from the hospital. Victim also testified to suffering from bowel incontinence starting immediately after the incident and for months thereafter. The fresh feces strewn throughout the apartment on the morning of Defendant's arrest corroborate the incontinence. Dr. George Borowski testified that the incontinence could have been caused either by head injury or by rectal trauma. However, he also testified that incontinence due to head injury would be short lived and would manifest itself as urinary incontinence, but bowel

12

incontinence due to rectal trauma could be long lasting and might require surgery to fix. Based on this evidence, the jury could reasonably have concluded that Victim had been anally penetrated. *See State v. Brown*, 100 N.M. 726, 728-29, 676 P.2d 253, 255-56 (1984) (holding sufficient evidence existed to convict for CSP despite the lack of witnesses or direct evidence).

The jury could also reasonably conclude that it was Defendant who had penetrated her. Victim shared an apartment with Defendant. At the beginning of the evening, both parties arrived home. No evidence was offered that any other person was present. Police testimony shows that Victim was still alone with Defendant when the officers arrived. Viewing these facts in the light most favorable to the guilty verdict, we determine that the evidence supports the conviction for criminal sexual penetration.

**Aggravated Battery**

Without making a specific argument, Defendant contests the sufficiency of evidence for the aggravated battery and battery convictions. To convict Defendant of aggravated battery against a household member with great bodily harm, the jury was instructed that the State was required to prove beyond a reasonable doubt that:

1.    [D]efendant touched or applied force to [Victim] by beating [her] about the face, head and body;

2.    [D]efendant intended to injure [Victim];

13

3. [D]efendant acted in a way that would likely result in death or great bodily harm to [Victim];

4. [Victim] was a household member.

The jury was further instructed that "[g]reat bodily harm means an injury to a person which creates a high probability of death."

The State produced pictures of the Victim's injuries. Victim testified that Defendant knocked her out when she tried to escape via the window. The officers found a hole in the wall with blood and hair in it. This is sufficient evidence of Defendant's intent to injure Victim. *State v. Hoeffel*, 112 N.M. 358, 361, 815 P.2d 654, 657 (Ct. App. 1991) ("Intent can be proved by circumstantial evidence."). The emergency room physician testified that he was concerned that Victim might have had potentially fatal brain injuries. As discussed above, no evidence indicated that anyone other than Defendant was present. Finally, Victim also testified that she lived with Defendant, thereby satisfying the requirement that the State prove Defendant had assaulted a household member. Viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence to support Defendant's aggravated battery conviction.

**Battery**

With respect to the crime of battery against a household member, the jury was instructed that the State was required to prove beyond a reasonable doubt that:

14

1. [D]efendant intentionally touched or applied force to [Victim] by yanking [her] away from the front door;

2. [D]efendant acted in a rude, insolent or angry manner;

3. [Victim] was a household member.

The State presented evidence from Officers St. Onge and Griego who witnessed Defendant yank Victim from the front door. The jury could reasonably infer from this that he acted in a rude, angry, or insolent manner. As discussed above, Victim was a household member. Accordingly, we hold that there was sufficient evidence to support Defendant's battery conviction.

**Kidnapping**

Defendant also mentions kidnapping in his sufficiency section; however, since he merely repeats his specific intent argument, we do not examine that issue for sufficiency. *See State v. Hernandez*, 104 N.M. 268, 274, 720 P.2d 303, 309 (Ct. App. 1986) ("A contention on appeal is deemed abandoned if appellant fails to cite authority or to explain the claim.").

**D.    The Police Opinion Statement**

Finally, Defendant argues that the district court's denial of his motion in limine to prevent officers from voicing their opinions that the scene of the crime was "one of the worse encountered in their careers" was more prejudicial than probative. "We review the admission of evidence under an abuse of discretion standard and will not

15

reverse in the absence of a clear abuse." *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

Rule 11-403 NMRA allows the district court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." The district court enjoys a great deal of discretion in applying this rule. *Dombos*, 2008-NMCA-035, ¶ 33. Here, the officer's statement is probative of the extent of Victim's injuries relevant to the count of aggravated battery against a household member. Defendant points to no unfair prejudice that resulted from the statement. *See State v. Fernandez*, 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct. App. 1994) ("In the absence of prejudice, there is no reversible error."). We conclude that the district court did not abuse its discretion.

**III.    CONCLUSION**

For the foregoing reasons, the district court's decision is affirmed.

**IT IS SO ORDERED**.

_____

**MICHAEL D. BUSTAMANTE, Judge**

16

**E CONCUR:**

_____
**ROBERT E. ROBLES, Judge**

_____
**TIMOTHY L. GARCIA, Judge**