# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date:   April 16, 2015**

**NO. 34,295**

**RODRIGO DOMINGUEZ,**

Petitioner,

v.

**STATE OF NEW MEXICO,**

Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Briana H. Zamora, District Judge**

Jorge A. Alvarado, Chief Public Defender
Kimberly M. Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Petitioner


Hector Balderas, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**CHÁVEZ, Justice.**

{1}     In *State v. Montoya*, 2013-NMSC-020, ¶¶ 2, 22-27, 54, 306 P.3d 426,[1] this Court held that the Double Jeopardy Clause of the United States Constitution, U.S. Const. amend. V, precludes a defendant from being cumulatively punished for both voluntary manslaughter and shooting at or from a motor vehicle resulting in great bodily harm in a situation where both convictions are based on the same shooting of the same victim. The double jeopardy analysis in *Montoya* has been applied in other cases by the Court of Appeals to preclude a defendant from being punished cumulatively for both aggravated battery and shooting at or from a motor vehicle resulting in great bodily harm. *See State v. Munoz*, 2014 WL 4292963, No. 30,837, mem. op. ¶¶ 2-3, 5 (N.M. Ct. App. June 23, 2014) (non-precedential), *cert. denied*, 2014-NMCERT-008; *State v. Rudy B.*, 2014 WL 3039618, No. 27,589, mem. op. ¶¶ 2, 4 (N.M. Ct. App. May 8, 2014) (non-precedential), *cert. denied*, 2014-NMCERT-007.

{2}     These are the exact arguments that Petitioner Rodrigo Dominguez made in 2005 on certiorari review to this Court of his convictions for voluntary manslaughter and shooting at or from a motor vehicle resulting in the death of one person, and

---

[1]*Overruling recognized by State v. Servantez*, 2014 WL 4292919, No. 30,414, mem. op. (N.M. Ct. App. Jul. 30, 2014) (non-precedential).

aggravated battery and shooting at or from a motor vehicle resulting in great bodily injury to a second person. *See State v. Dominguez* (*Dominguez I*), 2005-NMSC-001, ¶¶ 5, 17, 22, 137 N.M. 1, 106 P.3d 563, *overruled by Montoya*, 2013-NMSC-020, ¶¶ 2, 54. A majority of this Court ultimately rejected Dominguez's double jeopardy arguments, concluding that *State v. Gonzales*, 1992-NMSC-003, ¶¶ 4-12, 113 N.M. 221, 824 P.2d 1023, *overruled by Montoya*, 2013-NMSC-020, ¶¶ 2, 54, controlled. *Dominguez I*, 2005-NMSC-001, ¶ 8. Dominguez has now filed a habeas petition pursuant to Rule 5-802 NMRA seeking to retroactively apply *Montoya* to support the same double jeopardy claims he earlier raised on certiorari review. We again decline to accept Dominguez's double jeopardy claims because *Montoya* announced a new procedural rule that cannot be applied retroactively under *Kersey v. Hatch*, 2010-NMSC-020, ¶ 25, 148 N.M. 381, 237 P.3d 683.

**BACKGROUND**

{3}     The following facts from this Court's opinion in *Dominguez I* are not in dispute and are relevant only to understand the double jeopardy issues raised by Dominguez. Dominguez and several of his friends went to a convenience store to fight another group of individuals. *Dominguez I*, 2005-NMSC-001, ¶ 4. Dominguez supplied each member of his group with guns. *Id.* Both groups arrived in cars, and Dominguez was

the driver for his group. *Id.* Dominguez's group opened fire after one of their adversaries exited the other group's vehicle carrying a baseball bat. *Id.* One member of Dominguez's group fired multiple times into the opposing group's car and killed Ricky Solisz, the driver. *Id.* Another one of Dominguez's associates shot at and wounded Vince Martinez, an individual who had exited the other group's car. *Id.*

{4} In 2002, Dominguez was convicted of one count of voluntary manslaughter, contrary to NMSA 1978, Section 30-2-3(A) (1994); one count of aggravated battery, contrary to NMSA 1978, Section 30-3-5 (1969); two counts of shooting at or from a motor vehicle, contrary to NMSA 1978, Section 30-3-8(B) (1993); and one count of conspiracy to commit tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (1963, amended 2003) and NMSA 1978, Section 30-28-2 (1979).

{5} The Court of Appeals unanimously affirmed Dominguez's convictions. *See State v. Dominguez*, No. 23,286, mem. op. ¶¶ 5, 14 (N.M. Ct. App. May 20, 2003) (non-precedential). Dominguez petitioned for certiorari review, *State v. Dominguez*, *cert. granted*, 134 N.M. 320, 76 P.3d 638 (2003), and raised two multiple-punishment double jeopardy issues under the United States Constitution that are relevant to this appeal. First, he claimed that his convictions of voluntary manslaughter and shooting at or from a motor vehicle resulting in Solisz's death violated the protection against

double jeopardy. *Dominguez I*, 2005-NMSC-001, ¶ 5. Second, he claimed that his convictions of aggravated battery and shooting at or from a motor vehicle resulting in Martinez's injuries violated the protection against double jeopardy. *Id.* ¶ 17. On appeal, the parties did not dispute that these convictions were "based on the unitary conduct of [Dominguez] aiding and abetting" the shooting of Solisz and Martinez by another member of Dominguez's group. *Id.* ¶ 6. Because shooting at or from a vehicle and voluntary manslaughter or aggravated battery involve unitary acts underlying separate charged offenses, *id.* ¶¶ 6, 7, the Court focused on ascertaining whether the Legislature intended multiple punishments, *id.* ¶¶ 6, 18.

{6} A divided Supreme Court rejected Dominguez's claims and affirmed the Court of Appeals. *Id.* ¶ 26. Applying the *Blockburger* test and concluding that *Gonzales* was controlling precedent, *Dominguez I* refused to find a double jeopardy violation if a defendant was convicted of separately punishable offenses. 2005-NMSC-001, ¶¶ 8, 16, 21. Because the crimes of shooting at or from a motor vehicle and voluntary manslaughter each involved elements that were absent in the other crime, *Dominguez I* held that the offenses were separate, and therefore there was no double jeopardy violation if a defendant was convicted of both crimes. *Id.* ¶ 16. Similarly, *Dominguez I* held that the crimes of shooting at or from a motor vehicle and

4

aggravated battery each involved elements that were absent in the other crime; consequently, convicting Dominguez of both crimes also did not violate double jeopardy. *Id.* ¶ 18.

{7} This Court overruled *Dominguez I* in *Montoya*, 2013-NMSC-020, ¶¶ 2, 54. *Montoya* acknowledged that *Gonzales*, 1992-NMSC-003, and the cases that followed it, including *Dominguez I*, 2005-NMSC-001, had enabled cumulative punishment for the "theoretically separate offenses of causing great bodily harm to a person by shooting at [or from] a motor vehicle and the homicide resulting from the penetration of the same bullet into the same person." *Montoya*, 2013-NMSC-020, ¶ 2. *Montoya* held that "current New Mexico jurisprudence precludes cumulative punishment for both crimes." *Id. Montoya* did not answer the question of whether the analysis for finding a double jeopardy violation for manslaughter and shooting at or from a motor vehicle also applied to convictions for aggravated battery and shooting at or from a motor vehicle, *see id.* ¶ 54, although the Court of Appeals has affirmatively answered the question in two unpublished memorandum opinions, *see generally Munoz*, 2014 WL 4292963, No. 30,837; *Rudy B.*, 2014 WL 3039618, No. 27,589.

{8} Dominguez filed a petition for writ of habeas corpus pursuant to Rule 5-802, seeking to retroactively apply *Montoya* to support the same double jeopardy claims

he had raised in *Dominguez I*. The petition was summarily dismissed by the trial court for raising previously litigated issues. We then granted Dominguez's petition for writ of certiorari, which was filed pursuant to Rule 12-501 NMRA. *Dominguez v. State*, 2013-NMCERT-010.

**DISCUSSION**

{9}     When reviewing the "propriety of a lower court's grant or denial of a writ of habeas corpus," the trial court's findings of fact "concerning the habeas petition are reviewed to determine if substantial evidence supports the [trial] court's findings." *Duncan v. Kerby*, 1993-NMSC-011, ¶ 7, 115 N.M. 344, 851 P.2d 466. "Questions of law or questions of mixed fact and law . . . are reviewed de novo." *Id.* This "approach provides logical deference to the trial court fact-finder as first-hand observer, while assuring that higher courts perform their sanctioned role as arbiter[s] of the law." *Id.*

{10}     In this case, Dominguez presented facts "*only* for purposes of analyzing the double jeopardy issues presented on appeal." The State does not dispute these facts. Thus, there are only questions of law to be reviewed de novo. Dominguez argues that (1) this case does not concern *Montoya*'s retroactive application because "habeas petitioners *relitigating claims already disposed of on direct appeal* should benefit

6

from a new rule adopting their prior arguments"; (2) our retroactivity jurisprudence "must be revisited" if it precludes retroactive application of *Montoya*; and (3) "because [*Dominguez I*] expressly advocated the position adopted in *Montoya*, this Court may retroactively apply [*Montoya*] to [*Dominguez I*] *only*."

## I.      Dominguez Can Relitigate Previously Raised Claims

{11}     The trial court dismissed Dominguez's petition as a matter of law because the petition presented issues that had been previously litigated.  We review de novo the propriety of this determination.  *Duncan*, 1993-NMSC-011, ¶ 7.  In *Clark v. Tansy*, 1994-NMSC-098, ¶ 14, 118 N.M. 486, 882 P.2d 527, this Court held that "when a habeas petitioner can show that there has been an intervening change of law or fact, or that the ends of justice would otherwise be served, principles of finality do not bar relitigation of an issue adversely decided on [certiorari review]."  *Montoya* acted as an intervening change in the law because it announced a new rule.  2013-NMSC-020, ¶¶ 52-54.  "[A] court establishes a new rule when its decision is flatly inconsistent with the prior governing precedent and is an explicit overruling of an earlier holding." *Kersey*, 2010-NMSC-020, ¶ 16 (internal quotation marks and citations omitted).  In this case, *Montoya* explicitly overruled both *Dominguez I* and *Gonzales*, holding that current New Mexico double jeopardy jurisprudence precludes cumulative punishment

7

for shooting at or from a vehicle and "the homicide resulting from the penetration of the same bullet into the same person." *Montoya*, 2013-NMSC-020, ¶¶ 2, 54. *Montoya* reasoned that when both the shooting and the homicide charges stem from the same action and concern the same victim, the offenses are substantively the same. *See id.* ¶¶ 52-54. *Montoya* concluded that current New Mexico jurisprudence prevents overcharging and vindicates legislative intent. *See id.* ¶ 46. *Montoya* thus reflected a movement in New Mexico's double jeopardy jurisprudence "toward a substantive sameness analysis." 2013-NMSC-020, ¶¶ 46-54 (summarizing the evolution of double jeopardy case law in New Mexico). Under this approach, if a defendant's charges substantively involve the same crime, there is a double jeopardy violation. *See id.* ¶ 54. Determining whether different charges involve the same crime "may require looking beyond facial statutory language to the actual legal theory in the particular case by considering such resources as the evidence, the charging documents, and the jury instructions." *Id.* ¶ 49 (citing *State v. Swick*, 2012-NMSC-018, ¶¶ 21, 26, 279 P.3d 747). Because *Montoya* announced a new rule, Dominguez has the right to relitigate his double jeopardy claims that are similar to the double jeopardy claims raised in *Montoya*.[2]

---

[2]Dominguez also claims that his two convictions for shooting at or from a motor vehicle violated the protection against double jeopardy. However, because

8

{12} The first set of convictions concerns Solisz's death. These two convictions present facts that are similar to those in *Montoya*. *Compare Dominguez I*, 2005-NMSC-001, ¶¶ 1, 4, *with Montoya*, 2013-NMSC-020, ¶¶ 4-7, 11. As in *Montoya*, Dominguez was charged under separate statutes for voluntary manslaughter and shooting at or from a motor vehicle. *Compare Dominguez I*, 2005-NMSC-001, ¶ 1, *with Montoya*, 2013-NMSC-020, ¶ 11. As in *Montoya*, these charges stemmed from the same act and involved the same victim. *Compare Dominguez I*, 2005-NMSC-001, ¶ 6, *with Montoya*, 2013-NMSC-020, ¶¶ 30, 54. Under *Montoya*, Dominguez can relitigate the convictions of voluntary manslaughter and shooting at or from a motor vehicle.

{13} The second set of convictions concerns the shooting of Martinez. Dominguez was charged under different statutes for aggravated battery and shooting at or from a motor vehicle; the charges stemmed from one act and involved the same victim. *Dominguez I*, 2005-NMSC-001, ¶ 4. Under *Montoya*, the aggravated battery and the shooting are also substantively the same crime. *See Munoz*, 2014 WL 4292963, No. 30,837, mem. op. ¶ 4 (concluding that "*Montoya*'s reasoning also invalidates *Dominguez*'s holding that unitary conduct resulting in convictions for both

Dominguez cites to no intervening change of law concerning unit of prosecution claims, he cannot relitigate these convictions.

9

aggravated battery and shooting at or from a motor vehicle does not violate double jeopardy"); *Rudy B.*, 2014 WL 3039618, No. 27,589, mem. op. ¶ 2 (same). Consequently, pursuant to *Montoya*, Dominguez can also relitigate the convictions of aggravated battery and shooting at or from a motor vehicle.

{14} Dominguez urges us to go further and to hold that *Clark* requires that *Montoya* automatically be applied to his claims because he previously made the very arguments made by Montoya. However, Dominguez recognizes that this argument is problematic in light of *Kersey*, which requires courts to conduct an independent analysis as to whether a new rule should apply retroactively. 2010-NMSC-020, ¶ 15. Dominguez nonetheless claims that his interpretation of *Clark* can be reconciled with *Kersey* because *Kersey* did not consider *Clark*, and therefore it cannot be deemed to have impliedly overruled *Clark*. In the alternative, to the extent that *Clark* is irreconcilable with *Kersey*, Dominguez argues that *Clark* and *Kersey* approach the retroactivity issue differently and that this Court should adopt the approach taken in *Clark*. Dominguez misreads our opinions in *Clark* and *Kersey*; we therefore reject his arguments on this issue.

{15} *Clark* involved a habeas petition which relied upon case law that was "announced after [the petitioner's] conviction and sentence became final." *See*

1994-NMSC-098, ¶¶ 1-2. *Clark* applied a new rule announced by the United States Supreme Court after the petitioner's conviction and sentence became final without addressing the issue of retroactivity. *Id.* ¶¶ 15, 19. Dominguez's inference is understandable but erroneous, because although Clark received the benefit of the new rule, this Court never addressed retroactivity. *See id.* ¶ 15. The most likely explanation for the absence of retroactivity analysis in *Clark* is that the State never argued the issue; retroactivity is not mentioned in the State's reply brief. *See generally* Defendant-Appellant's Reply Brief, 1999 WL 33996276 (No. 23,832), *State v. Clark*, 1999-NMSC-035, 128 N.M. 119, 990 P.2d 793. Because courts will not insert arguments on a party's behalf, the issue of retroactivity was probably not argued, and therefore it was not discussed in the opinion. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (noting that New Mexico courts "will not review unclear arguments, or guess at what [litigants'] arguments might be").

{16} Because "[t]he general rule is that cases are not authority for propositions not considered," *Clark* cannot be read to support the idea that litigants may automatically avail themselves of a new rule, irrespective of any retroactivity doctrine, if they have argued in favor of that rule on appeal. *Fernandez v. Farmers Ins. Co. of Ariz.*,

11

1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 (internal quotation marks and citations omitted).  Unlike *Clark*, *Kersey* focused solely on whether the doctrine of retroactivity permitted the petitioner to benefit from a new rule.  *See Kersey*, 2010-NMSC-020, ¶¶ 15-31.

{17}     *Clark* and *Kersey* addressed separate issues.  *Clark* addressed whether a habeas petitioner can relitigate claims disposed of on appeal, while *Kersey* addressed whether new laws, if there are any, retroactively apply in analyzing those relitigated claims.  *See Kersey*, 2010-NMSC-020, ¶¶ 21-31; *Clark*, 1994-NMSC-098, ¶ 14.  Because *Kersey* and *Clark* concern different issues, *Kersey* did not have to overrule *Clark*.  *See Kersey*, 2010-NMSC-020, ¶ 25; *Clark*, 1994-NMSC-098, ¶ 14.  Consequently, both *Kersey* and *Clark* can, and should be, followed in this case.  We next apply the analysis we announced in *Kersey* to determine whether *Montoya* should be applied retroactively.

**II.     *Montoya* Does Not Apply Retroactively**

{18}     As we indicated in paragraph 11, *supra*, *Montoya* announces a new rule because *Montoya* explicitly overruled *Dominguez I*. *See Montoya*, 2013-NMSC-020, ¶¶ 2, 54; *Kersey*, 2010-NMSC-020, ¶ 16 (noting that "a court establishes a new rule when its decision is flatly inconsistent with the prior governing precedent and is an

explicit overruling of an earlier holding" (internal quotation marks and citations omitted)). Dominguez argues that *Montoya* does not announce a new rule because his argument in *Dominguez I* paralleled the reasoning in *Montoya*. This rationale contravenes *Kersey*'s standard for determining the existence of a new rule. *See* 2010-NMSC-020, ¶ 16. We look to precedent to determine whether a rule is new. *See id.* Thus, the single question is whether the double jeopardy analysis in *Montoya* should be applied retroactively.

{19} *Kersey* adopted the federal standard of retroactivity in *Teague v. Lane*, 489 U.S. 288, 301 (1989), *holding limited on other grounds*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), to determine whether a new rule applies retroactively. *Kersey*, 2010-NMSC-020, ¶¶ 25-26. This Court adopted the *Teague* standard because it "appropriately balances both the purpose of the writ [of habeas corpus] and the government's interest in finality by applying the law prevailing at the time a conviction became final and refusing, except in limited circumstances, to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation." *Kersey*, 2010-NMSC-020, ¶ 26 (second alteration in original) (internal quotation marks and citation omitted).

{20} Pursuant to *Teague*, *Kersey* mandates a two-pronged test to determine

retroactivity. 2010-NMSC-020, ¶ 25. "[N]ew rules generally should not be afforded retroactive effect unless (1) the rule is substantive in nature, in that it alters the range of conduct or the class of persons that the law punishes, or (2) although procedural in nature, the rule announces a watershed rule of criminal procedure." *Id.* (internal quotation marks and citations omitted). A substantive change must therefore "place[] an entire category of primary conduct beyond the reach of the criminal law, or . . . prohibit[] imposition of a certain type of punishment for a class of defendants because of their status or offense." *Kersey*, 2010-NMSC-020, ¶ 28 (ellipsis in original) (internal quotation marks and citation omitted). Watershed rules are those that are necessary to the fundamental fairness or accuracy of a criminal proceeding. *Id.* ¶¶ 28, 30 (citations omitted). Only the rule establishing a universal right to counsel in criminal proceedings has been upheld as a retroactively applied watershed rule.[3] *See Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963); Jennifer H. Berman, Padilla v. Kentucky: *Overcoming* Teague*'s "Watershed" Exception to Non-Retroactivity*, 15 U. Pa. J. Const. L. 667, 685 (2012) ("Indeed, in the years following *Teague*, the [United States Supreme] Court has yet to find a new rule that falls under the second

[3]The right to counsel applied retroactively because the absence of criminal defense attorneys produces a high risk of unreliable convictions. *See Whorton v. Bockting*, 549 U.S. 406, 416, 419 (2007).

14

*Teague* exception. Since *Teague* was decided in 1989, the Supreme Court has considered fourteen cases where the petitioner argued that a new rule is 'watershed' in nature and in every case the Court has refused to find the rule as such." (footnotes omitted) (internal quotation marks and citations omitted)).  The paucity of case law upholding watershed rules reflects the belief that new rules concerning basic due process are unlikely to emerge.  *See Teague*, 489 U.S. at 311-13 ("[W]e believe it unlikely that many such components of basic due process have yet to emerge.").

{21}     In *Kersey*, we concluded that a new procedural rule of law was announced in *State v. Frazier*, 2007-NMSC-032, ¶ 1, 142 N.M. 120, 164 P.3d 1, which held that "the predicate felony is always subsumed into a felony murder conviction, and no defendant can be convicted of both."  *Kersey*, 2010-NMSC-020, ¶ 1 (internal quotation marks and citation omitted).  *Kersey* concluded that our opinion in *Frazier* adopted "a new methodology for the review of double jeopardy claims involving multiple separate convictions for felony murder and the underlying predicate felony."  *Id.* ¶ 30.  *Kersey* held that this rule is not a substantive change in the law, but instead, it is a formulation of a new rule of criminal procedure.  *Id.  Kersey* noted that the new rule did not decriminalize any formerly criminal activities, and therefore it "did not alter the range of [punishable] conduct or the class of persons" punished.  *Id.*

15

Moreover, the rule left undisturbed the requirements for conviction such that both before and after *Frazier*, "the State [was and] is required to prove the essential elements of felony murder, as well as the essential elements of the underlying predicate felony, in order to secure a conviction." *Kersey*, 2010-NMSC-020, ¶ 30. Consequently, the *Kersey* court concluded that *Frazier* "formulated a new rule of criminal procedure, which does not implicate the fundamental fairness or accuracy of the criminal proceeding and, as such, is not available for retroactive application in habeas corpus proceedings." *Kersey*, 2010-NMSC-020, ¶ 30. Thus, *Kersey* held that the new rule in *Frazier* was not subject to retroactive application under either of the two exceptions established in *Teague*. *Kersey*, 2010-NMSC-020, ¶ 31.

{22} Our analysis of *Montoya* in this opinion should parallel the analysis of *Frazier* in *Kersey*. Aggravated battery, voluntary manslaughter, and shooting at or from a motor vehicle were crimes prior to *Montoya* and they remain crimes since *Montoya* was filed. *See* §§ 30-2-3(A), 30-3-5, & 30-3-8(B). Moreover, the requirements for conviction of those crimes were not altered by this Court's opinion in *Montoya*. *See generally* §§ 30-2-3(A), 30-3-5, & 30-3-8(B); *Montoya*, 2013-NMSC-020. Under *Kersey*, 2010-NMSC-020, ¶ 30, *Montoya* announces a procedural rule, not a substantive one. Therefore, *Kersey* precludes the retroactive application of *Montoya*

16

under the first *Teague* exception.  *See Kersey*, 2010-NMSC-020, ¶ 30.

{23}     *Montoya* also does not qualify for the watershed exception under *Teague*.  "In order to qualify as watershed, a new rule must meet two requirements.  First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction.  Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding."  *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (internal quotation marks and citations omitted).

{24}     *Montoya* concerns double jeopardy jurisprudence. *See* 2013-NMSC-020, ¶ 11.  Double jeopardy analysis is "applied at the conclusion of a case."  *Id.* ¶ 53 (internal quotation marks and citation omitted).  A new rule concerning double jeopardy cannot possibly impact the accuracy of criminal convictions. Consequently, *Montoya* fails *Teague*'s second exception, precluding Dominguez from applying *Montoya* retroactively as a watershed rule.

{25}     Using the *Kersey* analysis, 2010-NMSC-020, ¶ 30, *Montoya* announces a new rule that cannot be retroactively applied.  This is because *Montoya*'s new rule, which concerns a new methodology for reviewing double jeopardy claims, is neither a substantive change in the law nor a watershed rule. Consequently, Dominguez cannot avail himself of *Montoya*.

17

## III. *Kersey* Cannot Be Overruled Because of Stare Decisis

{26}    Dominguez argues that *Kersey* should be overruled if it precludes the retroactive application of *Montoya* to his convictions. He maintains that *Kersey*'s characterization of the new double jeopardy analysis as procedural is improper, or in the alternative, that *Kersey*'s adoption of *Teague* was improper. We are not persuaded by either argument.

{27}    New Mexico utilizes a four-factor test to determine whether to overturn precedent:

> 1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*State v. Pieri*, 2009-NMSC-019, ¶ 21, 146 N.M. 155, 207 P.3d 1132 (internal quotation marks and citations omitted). These factors must convincingly demonstrate that a precedent is wrong. *Id.*

{28}    *Kersey* recognized that the United States Supreme Court adopted the approach taken in *Teague* so that retroactivity jurisprudence can generate more consistent results because the earlier approach to determining retroactivity involved a multi-

18

factor balancing test that proved unworkable. *See Kersey*, 2010-NMSC-020, ¶¶ 22-25. In addition, we recently applied *Kersey* to another case, proving that it is not an abandoned doctrine. *See, e.g.*, *Ramirez v. State*, 2014-NMSC-023, ¶ 11, 333 P.3d 240. As a result, we see no compelling reason to overturn *Kersey*.

## IV. *State v. Forbes* Does Not Hold That Litigating a Claim on Appeal Automatically Entitles the Litigant to Retroactive Application of New Rules

{29} Finally, Dominguez argues that under *State v. Forbes*, 2005-NMSC-027, 138 N.M. 264, 119 P.3d 144, this Court may retroactively apply *Montoya* only to the case at bar because he "expressly advocated the position adopted in *Montoya*." *Forbes* does not stand for this proposition.

{30} *Forbes* involved a habeas petitioner who challenged his conviction on Confrontation Clause grounds. U.S. Const. amend. VI; N.M. Const. art. II, § 14; *Forbes*, 2005-NMSC-027, ¶¶ 1-2. Prior to his habeas petition, the petitioner initially appealed his conviction to the New Mexico Supreme Court on the same Confrontation Clause grounds and had obtained a reversal of his convictions. *Id.* ¶ 1. The United States Supreme Court vacated the reversal and remanded the case to the New Mexico Supreme Court, instructing this Court to apply the reliability analysis presented in *Lee v. Illinois*, 476 U.S. 530 (1986), *limited by Idaho v. Wright*,

19

497 U.S. 805, 817 (1990). On remand, the New Mexico Supreme Court affirmed the petitioner's conviction. *Forbes*, 2005-NMSC-027, ¶ 1. However, *Crawford v. Washington*, 541 U.S. 36, 68 (2004) validated the rationale used by this Court in its original reversal of the petitioner's conviction. *Forbes*, 2005-NMSC-027, ¶¶ 1, 6. The New Mexico Supreme Court granted the petitioner habeas relief and ordered a new trial. *Id.* ¶ 13.

{31}     During the habeas proceedings, the *Forbes* court had to determine whether the petitioner should benefit from the holding in *Crawford*, which was a case that was announced almost 20 years after the petitioner's conviction. *Forbes*, 2005-NMSC-027, ¶ 7. This issue "initially turn[ed] on whether *Crawford* announce[d] a new constitutional procedural rule" because *Forbes* noted that the United States Supreme Court did not expressly state whether *Crawford* announced a new rule. *Forbes*, 2005-NMSC-027, ¶ 7. *Forbes* concluded that *Crawford* did not announce a new rule because the result was dictated by United States Supreme Court precedent existing at the time of the petitioner's conviction and the petitioner could rely on *Crawford*. *Forbes*, 2005-NMSC-027, ¶¶ 8-10. Thus, under *Forbes*, a petitioner may rely upon case law post-dating the petitioner's conviction if the case law vindicates previously overruled precedent. *See id.* ¶ 13.

{32}    In summary, when we granted habeas relief in *Forbes*, we did so on the basis of well-established existing precedent, not a new rule. *See id.* ¶¶ 13-14. The viability of the previous law may have been confirmed by a more recent case, but the precedent had already been established. *See id.* ¶ 13. *Forbes* enables a habeas petitioner to rely upon *existing precedent* to relitigate a claim on the basis that a court failed to apply law that was *available at the time of conviction. Id.* ¶¶ 7-9. In addition, the decision in *Forbes* was "limited to the very special facts of this case," *id.* ¶ 13, and it is also limited to situations where the petitioner is relitigating claims based upon existing precedent.

{33}    Dominguez cannot rely upon *Forbes* because he does not rely upon existing precedent to support his position. Dominguez relies upon *Montoya*, a case decided many years after his conviction was final. Instead of being dictated by previous precedent, *Montoya* expressly departs from established law to create a new rule. *Compare Montoya*, 2013-NMSC-020, ¶ 2 (overruling *Gonzales*, 1992-NMSC-003, *Dominguez*, 2005-NMSC-001, *and State v. Riley*, 2010-NMSC-005, 147 N.M. 557, 226 P.3d 65), *with Forbes*, 2005-NMSC-027, ¶ 13 ("Our decision is . . . highlighted by the fact that the very law this Court applied to [the petitioner's] case twenty years ago has now been vindicated, which entitled him now to the same new trial he should

21

have received back then.").  At the time of Dominguez's appeal in *Dominguez I*, a majority of this Court relied on existing precedent to affirm his convictions.  *See generally Dominguez I*, 2005-NMSC-001 (citing *Gonzales*, 1992-NMSC-003). Unlike *Crawford* or *Forbes*, *Montoya* does not reaffirm previously ambiguous case law.  *Compare Crawford*, 541 U.S. at 57 (citing *Douglas v. Alabama*, 380 U.S. 415, 418-20 (1965), *and Forbes*, 2005-NMSC-027, ¶ 8 (acknowledging the United States Supreme Court's reliance on *Douglas*, 280 U.S. 415, in *Crawford*, 541 U.S. 36, was contrary to *New Mexico v. Earnest*, 477 U.S. 648 (1986)), *with Montoya*, 2013-NMSC-020, ¶ 2 (overruling, rather than vindicating, prior double jeopardy jurisprudence).  Consequently, Dominguez must request the retroactive application of *Montoya* under *Kersey* to prevail.  In fact, *Forbes* merely followed the *Teague* approach in first determining whether *Crawford* announced a new rule as a possible prelude to retroactivity analysis.  *See Forbes*, 2005-NMSC-027, ¶¶ 7-8 (citing *Teague*, 489 U.S. 288).  Moreover, Dominguez cannot try to extend *Forbes* beyond its narrow holding.  *Forbes* is limited to a situation where the petitioner had relitigated claims based upon a previous rule that was subsequently vindicated by the Court's later holding.  *See id.* ¶ 13.

{34}     Dominguez nevertheless contends that *Forbes* vindicated the rights of the

22

petitioner on appeal "because this Court had relied on then-existing precedent when it initially reversed the conviction," and thus the petitioner preserved his identical argument on appeal. However, such an extension misses a critical policy distinction between *Forbes* and the position Dominguez urges us to adopt. By limiting its holding to case law available at the time of the petitioner's conviction, *Forbes* promotes the finality of convictions by reaffirming existing precedent. *See Kersey*, 2010-NMSC-020, ¶ 26 (noting that applying the prevailing law at the time that a conviction becomes final acknowledges the government's interest in the finality of the convictions). This limited holding "is consistent with our responsibility to do justice to each litigant on the merits of *his* [*or her*] *own case*." *Forbes*, 2005-NMSC-027, ¶ 13 (emphasis added) (internal quotation marks and citation omitted). In contrast, Dominguez's position undermines the finality of convictions by making it easier to retroactively apply new laws that were unavailable at the time of the petitioner's conviction. Dominguez's position would allow criminal petitioners to relitigate their convictions any time a new law is announced, regardless of whether the new law was available at the time of their convictions. We are not persuaded by Dominguez's reliance on *Forbes*.

**CONCLUSION**

{35} Dominguez has the right to relitigate his double jeopardy claims in the habeas petition before us. *See Clark*, 1994-NMSC-098, ¶¶ 11, 14. However, *Kersey* precludes the retroactive application of *Montoya* during this relitigation, and Dominguez is not entitled to relief on any of his double jeopardy claims. We therefore affirm the trial court's dismissal of Dominguez's writ of habeas corpus.

{36} **IT IS SO ORDERED.**

_____

**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**CHARLES W. DANIELS, Justice**

24