**Certiorari Denied, January 29, 2016, No. S-1-SC-35675**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-020**

**Filing Date:  December 7, 2015**

**Docket No. 34,006**

**NATIONAL ROOFING, INC.,
MIDTOWN METALS, LLC, and
BUILDING ENVELOPE SERVICES, LLC,**

 **Plaintiffs-Appellants,**

**v.**

**ALSTATE STEEL, INC., HUGHES &
ASSOCIATES, INC., REID & ASSOCIATES,
LLC, MASON CORPORATION, MERILLAT
LP, MASCO CABINETRY, LLC, JOHN DOE,
and STUDIO SOUTHWEST ARCHITECTS,
INC., formerly known as DESIGN
COLLABORATIVE SOUTHWEST,**

 **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge**

Law Offices of Daymon B. Ely
Damon B. Ely
Albuquerque, NM

Calvert Menicucci P.C.
Michael F. Menicucci
Albuquerque, NM

for Appellants

Dixon, Scholl, & Bailey, P.A.
Gerald G. Dixon
Dennis W. Hill

James C. Wilkey
Albuquerque, NM

for Appellee Alstate Steel, Inc.

The Law Offices of Robert Bruce Collins
Holly R. Harvey
Albuquerque, NM

for Appellee Reid & Associates, LLC and Hughes & Associates, LLC

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Earl E. DeBrine
Anna E. Indahl
Albuquerque, NM

for Appellee Merillat LP and Masco Cabinetry, LLC

Guebert Bruckner P.C.
Terry Guebert
Robert F. Gentile
Albuquerque, NM

for Appellee Mason Corporation

## OPINION

**VANZI, Judge.**

**{1}** Subject to various exceptions, "[a]n action for damages resulting from a tort can only be sustained by the person directly injured thereby, and not by one claiming to have suffered collateral or resulting injuries." *Loucks v. Albuquerque Nat'l Bank*, 1966-NMSC-176, ¶¶ 46-47, 76 N.M. 735, 418 P.2d 191. Nevertheless, National Roofing (Plaintiff) has sued several defendants in strict liability and negligence for damages allegedly resulting from physical injuries to its employees. The district court dismissed Plaintiff's claims against all Defendants on the ground that no duty exists. Plaintiff argues on appeal that the district court impermissibly relied on principles of foreseeability in dismissing its claims, contrary to *Rodriguez v. Del Sol Shopping Center Associates*, 2014-NMSC-014, 326 P.3d 465. We hold that the principle stated in *Loucks* remains good law, entirely consistent with the duty analysis set forth in *Rodriguez*, and we affirm.

## I.  BACKGROUND

**{2}** Plaintiff has alleged the following facts, which we accept as true. *See Envtl.*

2

*Improvement Div. v. Aguayo*, 1983-NMSC-027, ¶ 10, 99 N.M. 497, 660 P.2d 587 ("[I]f a district court grants a motion to dismiss pursuant to Rule [1-0]12(b)(6) [NMRA], then the allegations pleaded in the complaint must be taken as true for purposes of an appeal."). In March 2010 employees of Plaintiff were injured while repairing the deck of a canopy at a cabinet manufacturing facility owned by Masco Cabinetry, LLC and Merillat LP. The canopy was designed and manufactured by Mason Corporation and/or Studio Southwest Architects, Inc., and installed by Alstate Steel, Inc., Hughes & Associates, Inc., and/or Reid & Associates, LLC. Plaintiff and its affiliates sued all seven entities (collectively Defendants) in strict liability and negligence for damages Plaintiff sustained as a result of the injuries to its employees—specifically, increased workers' compensation premiums, sums paid to reduce its insurance rating or modifier, and "los[t] income and future income" resulting from its now deficient safety record.[1] Because Plaintiff itself suffered no physical injury or property damage, the district court granted Defendants' motion to dismiss all counts, precipitating this appeal. Plaintiff now asserts as a matter of law that *Rodriguez* precludes dismissal. Our review is de novo. *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917.

## II.    DISCUSSION

**{3}**    In *Rodriguez*, our Supreme Court held that "foreseeability is not a factor for courts to consider when determining the existence of a duty, or when deciding to limit or eliminate an existing duty in a particular class of cases." 2014-NMSC-014, ¶ 1. In so holding, the Court expressed concern that a determination of "no duty" based on an improbable or remote nature of risk invites a court to weigh the particular facts of a case, usurping the jury's role in determining legal cause and breach. *See id.* ¶¶ 18-19, 22. In short, foreseeability is simply not subject to categorical analysis by a court because "[w]hat may not be foreseeable under one set of facts may be foreseeable under a slightly different set of facts[,]" *id.* ¶ 1, and facts are appropriately weighed by the jury, *see Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 9, 148 N.M. 713, 242 P.3d 280. Nonetheless, "[c]ourts are not powerless to dismiss cases as a matter of law[.]" *Rodriguez*, 2014-NMSC-014, ¶ 24. A court may still (1) articulate policy reasons (unrelated to foreseeability) that justify a categorically limited duty, or no duty rule, *id.* ¶ 5; or (2) decide, as a matter of law, that no reasonable jury could find legal cause or breach, *id.* ¶ 24.

**{4}**    This framework was adopted from the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 cmt. j (2010). *Rodriguez*, 2014-NMSC-014, ¶ 1. Cases that do not involve physical or emotional harm to the plaintiff are treated separately in the Restatement. *See* Restatement (Third) of Torts: Liability for Economic Harm § 1(a) (Tentative Draft No. 1, 2012) ("An actor has no general duty to avoid the unintentional

---

[1]It has been conceded on appeal that National Roofing's affiliates are not proper parties to this action, and they are hereby dismissed.

infliction of economic loss on another.").[2] Comments to Section 1 recognize that "[a]n actor ordinarily has a duty of care when engaged in any activity that creates a risk of physical harm to others[,]" but that "[d]uties to avoid the negligent infliction of economic loss are notably narrower." *Id.* cmt. a. Thus—specifically relevant to this case—a plaintiff normally cannot recover for economic loss caused by "unintentional injury to another person[,] or unintentional injury to property in which the [plaintiff] has no proprietary interest." Restatement (Third) of Torts: Liability for Economic Harm § 7 (Tentative Draft No. 2, 2014). These limits

> are related applications of the same principle, and they apply to facts that usually have certain features in common. The plaintiff and defendant typically are strangers. The defendant commits a negligent act that injures a third party's person or property, and indirectly though perhaps foreseeably—causes various sorts of economic loss to the plaintiff: lost income or profits, missed business opportunities, expensive delays, or other disruption. The plaintiff may suffer losses, for example, because the defendant injured someone with whom the plaintiff had a contract and from whom the plaintiff had been expecting performance, such as an employee or supplier. Or the plaintiff may be unable to make new contracts with others, such as customers who cannot conveniently reach the plaintiff's business because the defendant's negligence has damaged property that now blocks the way. The common law of tort does not recognize a plaintiff's claim in such circumstances.

*Id.* cmt. a. (citations omitted)[3]

---

[2]This section was approved by the membership of the American Law Institute (ALI) at the 2012 Annual Meeting. The related section specific to economic loss from injury to a third person or property not belonging to the plaintiff, which will be discussed in this Opinion, was approved by the ALI's membership at the 2014 Annual Meeting. According to the Institute, both sections represent the most current statements of the ALI's position on the subject and may be cited in opinions or briefs until the official text is published. Torts: Liability for Economic Harm, American Law Institute, https://www.ali.org/projects/show/torts-liability-economic-harm-3rd/ (last visited October 22, 2015).

[3]The parties and the district court have conflated this doctrine with the "economic loss rule." In New Mexico, that term has been relegated to a different (but related) context that calls for doctrinally policing the line between tort and contract. *Utah Int'l, Inc. v. Caterpillar Tractor Co.*, 1989-NMCA-010, ¶ 17, 108 N.M. 539, 775 P.2d 741 ("[I]n commercial transactions, when there is no great disparity in bargaining power of the parties, economic losses from injury of a product to itself are not recoverable in tort actions; damages for such economic losses in commercial settings in New Mexico may only be

**{5}** The ALI's position, while often framed in different ways, is not novel. The rule against recovery for harm to another is typically associated with *Robins Dry Dock & Repair Co. v. Flint*, where the plaintiffs—time charterers of a ship owned and possessed by a third party—sued the defendant for negligently damaging the ship's propeller, and thereby causing them to lose profits while the propeller was being repaired. 275 U.S. 303, 307 (1927), *superseded by statute on other grounds as stated in Slaven v. BP America, Inc.*, 786 F. Supp. 853 (C.D. Cal. 1992). The United States Supreme Court held that the plaintiffs lacked standing to sue in negligence because they had no proprietary interest in the damaged ship. *Id.* at 308-09. Thus, Justice Holmes famously wrote, even assuming that the plaintiffs' loss "flowed directly" from the injury to the propeller, "a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. The law does not spread its protection so far." *Id.* at 309 (citation omitted).

**{6}** The dominant justification for the continued reliance on this general rule is pragmatic: liability for indirect (but foreseeable) consequences to third parties resulting from negligent harm could be limitless given society's proliferation of commercial relationships and the corresponding potential for unbounded actual and prospective economic harm flowing from a single negligent act. *See, e.g.*, *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 54 (1st Cir. 1985) ("The number of persons suffering foreseeable financial harm in a typical accident is likely to be far greater than those who suffer traditional (recoverable) physical harm."); Restatement (Third) of Torts: Liability for Economic Harm § 7 cmt. b ("Recognizing claims for those sorts of losses would greatly increase the number, complexity, and expense of potential lawsuits arising from many accidents. In some cases, recognition of such claims would also result in liabilities that are indeterminate and out of proportion to the culpability of the defendant."); *see generally* Fleming James, Jr., *Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal*, 25 Vand. L. Rev. 43, 45, 48-55 (1972).

**{7}** For its part, the Restatement (Second) of Torts treated the type of claim for lost

---

recovered in contract actions." (citation omitted)). *Compare* Restatement (Third) of Torts: Liability for Economic Harm § 3: Preclusion of Tort Liability Arising from Contract (Economic Loss Rule) (Tentative Draft No. 1, 2012), which is paradigmatically rooted in products liability and has its own section in the Restatement, *with* Restatement (Third) of Torts: Liability for Economic Harm § 7, titled "Economic Loss from Injury to a Third Person or to Property Not Belonging to the Claimant." *See also* Dan B. Dobbs, *An Introduction to Non-Statutory Economic Loss Claims*, 48 Ariz. L. Rev. 713, 714 (2006) (identifying two distinct rules limiting recovery of stand-alone economic loss). Professor Dobbs would call the principle discussed in this Opinion the "stranger economic loss rule." Dobbs, *supra*, at 714. It is an often unstated principle of tort law, tethered to rationales that have little to do with doctrinal policing, and it applies with equal force when the plaintiff and defendant are strangers without any contractual relationship. Dobbs, *supra*, at 715.

profits advanced in *Robins* as a nonactionable assertion of negligent interference with contracts and prospective contractual relations. *See* Restatement (Second) of Torts § 766C (1979). In essence, one cannot typically sue another in negligence for conduct that causes a third person to breach a contract with the plaintiff; or that causes the plaintiff's performance of a contract to be more expensive or burdensome; or that interferes with the plaintiff's ability to acquire potential contractual relationships with third persons—e.g., lost profits. *Id.* Applying Section 766C, for example, the Supreme Court of Iowa has concluded that an employer's claim in negligence for increased workers' compensation premiums resulting from injuries to its employees caused by a third party tortfeasor was nonactionable. *Anderson Plasterers v. Meinecke*, 543 N.W.2d 612, 613-14 (Iowa 1996). Indeed, such actions, whether the harm alleged is foreseeable or not, have been "almost universally denied." *Id.* at 614; *accord Ore-Ida Foods, Inc. v. Indian Head Cattle Co.*, 627 P.2d 469, 473 (Or. 1981) (en banc) (rejecting employer's claim to recover workers' compensation benefits based on the prevailing rule "that a plaintiff may not recover for economic loss resulting from negligent infliction of bodily harm to a third person").

**{8}** Consistent with *Robins* and the Restatements, our Supreme Court recognizes both the distinction between negligent and intentional interference with contractual relations, *see Anderson v. Dairyland Ins. Co.*, 1981-NMSC-130, ¶ 11, 97 N.M. 155, 637 P.2d 837 ("[E]ither an improper motive (solely to harm plaintiff), or an improper means is required for liability" (internal quotation marks and citation omitted)), and the general rule that "[a]n action for damages resulting from a tort can only be sustained by the person directly injured thereby, and not by one claiming to have suffered collateral or resulting injuries[,]" *Loucks*, 1966-NMSC-176, ¶ 46. As recently as 2003, the Court acknowledged "the prevailing rule in America[,]" that "a plaintiff may not recover in negligence for economic loss resulting from bodily harm to another." *Berlangieri v. Running Elk Corp.*, 2003-NMSC-024, ¶ 22, 134 N.M. 341, 76 P.3d 1098 (internal quotation marks and citation omitted).

**{9}** There are numerous "exceptions" to this principle of negligence law—which are probably better described as situations in which the pragmatic justification for limiting liability is simply absent. For instance, claims alleging intentional (as opposed to negligent) interference with contractual relations are actionable, but liability in those instances is inherently limited by the doctrine's intent requirement. *See Anderson*, 1981-NMSC-130, ¶ 11. Similarly, a loss-of-consortium claimant can sue for physical harm to another by demonstrating, in part, that "the claimant and the injured party shared a sufficiently close relationship," a requirement that itself categorically limits liability to a particular class of relationships of mutual dependence. *See Wachocki v. Bernalillo Cty. Sheriff's Dep't*, 2011-NMSC-039, ¶¶ 5, 10, 150 N.M. 650, 265 P.3d 701. Recovery for wrongful death is provided for and carefully circumscribed by statute. *See* NMSA 1978, § 41-2-3 (2001). And while an insurer may claim as subrogee, the claim is brought in the "shoes of the insured," and the defendant is not subject to potentially infinite strings of liability. *Amica Mut. Ins. Co. v. Maloney*, 1995-NMSC-059, ¶ 9, 120 N.M. 523, 903 P.2d 834. "[I]n insurance subrogation cases . . . there is but one cause of action for the entire recovery, including the subrogated amount, and that cause of action lies in the name of the insured." *Id.* ¶ 11.

6

**{10}** At common law, the English cause of action *per quod servitium amisit* provided a remedy in the employment context for a master to recover for the loss of services of a servant injured by a third party. *See B.V. Merrow Co. v. Stephenson*, 300 N.W.2d 734, 735 (Mich. Ct. App. 1980) (per curiam) (citing Mary's Case, 9 Coke 111b (5 Coke's Reports 201, 204); 77 Eng. Rep. 895 (1612)). But the action was based on the outdated social concept that domestic servants were the property of their masters, *id.*, and the assertion of such claims has long since been abandoned. *See* Restatement (Second) of Agency § 316 cmt. b (1958) ("For several hundred years . . . there have been few cases in which a master has brought an action for negligent harm to a servant not a member of his family."); *see also Cont'l Cas. Co. v. P.D.C., Inc.*, 931 F.2d 1429, 1431 (10th Cir.1991) (concluding that New Mexico would reject a claim that an employer faced with a diminished work force due to employee injury has a cause of action against the tortfeasor).

**{11}** While Plaintiff's injured employees might state a claim against Defendants for their physical injuries, Plaintiff itself, which has suffered neither a physical injury nor property damage, is alleging collateral or resulting harm—increased premiums, an increased ratings modifier, and lost profits resulting from unsuccessful bids on new jobs—based on its status as employer of those injured, and on its commercial relationships with existing and potential customers and with its workers' compensation insurance carrier. Plaintiff has made no allegation that Defendants intentionally and improperly interfered with these contractual relations, *see Anderson*, 1981-NMSC-130, ¶ 11; Plaintiff certainly has made no claim on damages for loss of consortium; and this is not a claim on any subrogated interest—nor could it be. *Liberty Mut. Ins. Co. v. Salgado*, 2005-NMCA-144, ¶ 9, 138 N.M. 685, 125 P.3d 664 ("[O]ur courts have historically held that an employer/insurer does not have a statutory assignment or subrogation interest in a worker's third-party claim.").

**{12}** Despite the requirements of these settled doctrines, Plaintiff argues that our Supreme Court's adoption of the Restatement's duty analysis in *Rodriguez* now authorizes it to sue in negligence and strict liability for economic loss based entirely on physical harm to another. For the reasons stated herein, we do not believe *Rodriguez* contemplated such a result. *See Dominguez v. State*, 2015-NMSC-014, ¶ 16, 348 P.3d 183 ("The general rule is that cases are not authority for propositions not considered." (alteration, internal quotation marks, and citation omitted)).[4] We agree with the district court that public policy has

---

[4]The ALI is apparently in accord with our conclusion that the doctrine prohibiting recovery for economic loss resulting from physical injury to another, applied by our Supreme Court in *Loucks*, is entirely consistent with the duty analysis set forth in *Rodriguez*. As discussed above, the Institute has included both doctrines in the Restatement (Third) of Torts, without yet noting any conflict between them. *See* Restatement (Third) of Torts: Liability for Economic Harm § 1 cmt. a ("Duties to avoid the negligent infliction of economic loss are notably narrower."); *Id.* § 7 cmt. b ("A collision that sinks a ship will cause a well-defined loss to the ship's owner; but it also may foreseeably cause economic losses to wholesalers . . . and then to suppliers, employees, and customers of the retailers,

historically—and appropriately—justified a categorical no duty rule under the present circumstances, and we conclude that application of the rule stated in *Loucks* and subsequently recognized in *Berlangieri* defeats Plaintiff's claims as a matter of law.

**{13}** Indeed *Rodriguez* itself provides that there are "exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases," and in those cases "a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification." 2014-NMSC-014, ¶ 13 (internal quotation marks and citation omitted). Cases alleging liability in negligence or strict liability arising only from physical harm to another, constitute one such class of cases. *Loucks*, 1966-NMSC-176, ¶¶ 46-47. No fact-specific analysis is necessary to dismiss them. *See La. ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1023 (5th Cir. 1985) (en banc) (describing the rule as a pragmatic limitation on liability even when losses to third parties without a proprietary interest are "certainly foreseeable"); *Aikens v. Debow*, 541 S.E.2d 576, 592 (W. Va. 2000) ("It is a question of public policy.").

**{14}** For a number of reasons, and without exception, other jurisdictions have uniformly rejected the precise claims Plaintiff advances. Some have held that an employer's lost profits and/or increased workers' compensation premiums resulting from a third party tortfeasor's injuries to employees are harms that are not foreseeable or are otherwise too remote to be subject to liability. *See Crab Orchard Improvement Co. v. Chesapeake & O. Ry. Co.*, 115 F.2d 277, 282-83 (4th Cir. 1940) (applying West Virginia law); *Fischl v. Paller & Goldstein*, 282 Cal. Rptr. 802, 804 (Ct. App. 1991); *RK Constructors, Inc. v. Fusco Corp.*, 650 A.2d 153, 157 (Conn. 1994); *Southland Constr., Inc. v. Greater Orlando Aviation*, 860 So. 2d 1031, 1033-34, 1036 (Fla. Dist. Ct. App. 2003) (too remote and foreclosed by Pennsylvania's workers' compensation scheme); *Unique Paint Co. v. Wm. F. Newman Co.*, 411 S.E.2d 352, 353 (Ga. Ct. App. 1991); *N. States Contracting Co. v. Oakes*, 253 N.W. 371, 372 (Minn. 1934); *Whirley Indus., Inc. v. Segel*, 462 A.2d 800, 804 (Pa. Super. Ct. 1983) ("[A]n increase in an employer's [W]orkmen's [C]ompensation premiums following an automobile accident is not reasonably foreseeable by a driver."); *Higbie Roth Constr. Co. v. Houston Shell & Concrete*, 1 S.W.3d 808, 812-13 (Tex. App. 1999).

**{15}** Other courts have held that the exclusivity provisions of the various workers' compensation acts impliedly forbid such recovery. *Erie Castings Co. v. Grinding Supply, Inc.*, 736 F.2d 99, 103-104 (3d Cir. 1984) (applying Pennsylvania law); *Southland Constr., Inc.*, 860 So. 2d at 1035-36; *Pro-Staffers, Inc. v. Premier Mfg. Support Servs., Inc.*, 651 N.W.2d 811, 815-16 (Mich. Ct. App. 2002); *Multiplex Concrete Co. v. Besser Co.*, 380 A.2d 708, 710 (N.J. Super. Ct. App. Div. 1977) (per curiam) (action prohibited in both strict liability and negligence); *M.B. Haynes Corp. v. Strand Electro Controls, Inc.*, 487 S.E.2d 819, 820-21 (N.C. Ct. App. 1997); *Schipke v. Grad*, 1997 SD 38, ¶ 13, 562 N.W.2d 109, 112

---

and so on. Recognizing claims for those sorts of losses would greatly increase the number, complexity, and expense of potential lawsuits arising from many accidents.").

("[W]e find ourselves in agreement with those courts that have denied recovery on the ground that the employer, having no more rights under the workers' compensation statutes against a negligent third party than the employee injured by the third party's negligence, has no right to sue for increased premiums.").

**{16}** While we join these jurisdictions, we do so in agreement with courts that have ruled on the more basic ground that public policy categorically prohibits recovery under these circumstances. *Am. River Transp. Co. v. KAVO KALIAKRA SS*, 206 F.3d 462, 465 (5th Cir. 2000) (stating that an employer cannot recover in admiralty for increased workers' compensation premiums resulting from injuries to employees because "economic damages are not recoverable in negligence untethered to an injury to a property interest"); *Anderson Plasterers*, 543 N.W.2d at 613-14 (discussed above); *R.L. Whipple Co. v. Pondview Excavation Corp.*, 887 N.E.2d 1095, 1097 (Mass. App. Ct. 2008) (stating that an employer cannot maintain a negligence claim to recover increased workers' compensation premiums from the third party who injured its employee because "purely economic losses are unrecoverable in tort . . . actions in the absence of personal injury or property damage" (alteration in original) (internal quotation marks and citation omitted)); *Cincinnati Bell Tel. Co. v. Straley*, 533 N.E.2d 764, 771 (Ohio 1988) ("We do not find that a duty to an injured employee's employer exists by virtue of the pronouncements of common law, by legislative enactment, or by operation of law. It would appear that such a duty could only exist based on contract or warranty."); *Ore-Ida Foods*, *Inc.*, 627 P.2d at 473 (citing the prevailing rule "that a plaintiff may not recover for economic loss resulting from negligent infliction of bodily harm to a third person"); *Vogel v. Liberty Mut. Ins. Co.*, 571 N.W.2d 704, 708 (Wis. Ct. App. 1997) (holding, as a matter of public policy, that allowing damages to an employer for economic consequences arising from injuries to an employee would "enter a field with no sensible stopping point").

**{17}** This conclusion is consistent with both *Loucks*, 1966-NMSC-176, ¶¶ 46-47, and *Rodriguez*, 2014-NMSC-014, ¶¶ 24-25, and therefore, the district court appropriately dismissed Plaintiff's claims.

## III. CONCLUSION

**{18}** Affirmed.

**{19}** **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

9

**MICHAEL E. VIGIL, Chief Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**